UNITED STATES v. EHRGOTT et al. (two cases).

(Circuit Court, S. D. New York. November 1, 1910.)

1. CUSTOMS DUTIES (§ 125*)—VIOLATION—"FRAUDULENTLY."
    The word "fraudulently" as used in Rev. St. § 2987 (U. S. Comp. St. 1901, p. 1959), providing that if any warehoused merchandise shall be fraudulently concealed in or removed from any public or private ware-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

house, etc., means that the acts must be done with an intent to evade the law; the intent being fully alleged.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 125.*

For other definitions, see Words and Phrases, vol. 3, pp. 2955–2957.]

2. CUSTOMS DUTIES (§ 134*)—CUSTOMS LAWS—VIOLATION—INDICTMENT—"FALSE PRETENSE."

Where an indictment for removing merchandise from a public warehouse without paying the duty thereon alleged that the goods had been deposited in Brooklyn in a warehouse under bond, and then alleged that on a given day the importer withdrew them under a false pretense that they were to be exported, the term "false pretense" should be construed to mean at least that the defendant did not mean to export the goods when he removed them.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 134.*

For other definitions, see Words and Phrases, vol. 3, pp. 2662–2668; vol. 8, p. 7661.]

3. CUSTOMS DUTIES (§ 125*) — CUSTOMS LAWS — VIOLATION — STATUTES — CONSTRUCTION.

Rev. St. § 2987 (U. S. Comp. St. 1901, p. 1959), provides that, if any warehoused merchandise shall be fraudulently concealed in or removed from any public or private warehouse, the same shall be forfeited to the United States, and all persons convicted of fraudulently concealing or removing such merchandise, or in aiding and abetting such concealment, shall be liable to certain penalties. Held, that the offense created by such section was complete on the removal of goods subject to duty on which duty had not been paid from the warehouse, and that subsequent concealment outside a warehouse after removal while admissible, in proof of the fraudulent intent in the removal, did not constitute a substantive offense, nor add anything to the removal which had preceded it.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 125.*]

4. CUSTOMS DUTIES (§ 125*)—VIOLATION OF STATUTE LAW—REMOVAL OF DUTIABLE GOODS FROM WAREHOUSE—"WAREHOUSE."

Where dutiable goods are removed from a warehouse without payment of duty and subsequently concealed, the truck on which the goods are removed cannot be considered to be a warehouse within Rev. St. § 2987 (U. S. Comp. St. 1901, p. 1959), making it an offense to remove dutiable goods from a warehouse without payment of duty, etc.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 125.*

For other definitions, see Words and Phrases, vol. 8, pp. 7389–7390; vol. 8, p. 7832.]

5. CUSTOMS DUTIES (§ 134*)—CUSTOMS LAWS—VIOLATIONS—PLACE.

Rev. St. § 2987 (U. S. Comp. St. 1901, p. 1959), provides that, if any warehoused merchandise shall be fraudulently concealed in or removed from any public or private warehouse, the same shall be forfeited to the United States, and all persons convicted of fraudulently concealing or removing such merchandise shall be punished, etc. Held, that an indictment alleging that certain beans subject to duty had been deposited in a warehouse in Brooklyn, and that on a given day defendant withdrew them under bond on the false pretense that they were to be exported, and that he removed the goods from the warehouse and concealed them in Manhattan, it did not charge a crime committed in the Southern District of New York, and was therefore demurrable.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 134.*]

6. CUSTOMS DUTIES (§ 15*)—DUTIES DUE—TIME—ENTRY.

As soon as imported merchandise subject to duty has been entered into the country, duties become due on same, whether the entry is surreptitious or honest.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 15.*]

7. STATUTES (§ 219*)—CUSTOMS LAWS—VIOLATION—"UNDER INSPECTION OF PROPER OFFICERS"—TREASURY REGULATIONS.

Rev. St. § 2979 (U. S. Comp. St. 1901, p. 1953), provides that, if an importer gives satisfactory security that the merchandise is to be exported, the collector and naval officers shall permit the merchandise under the inspection of the proper officers to be shipped without payment of duty. *Held*, that since by Treasury Department Articles 834, 838, 841, and 842, providing a system of licensed truckmen to whom a limited custody of the goods is intrusted for the purpose only of transfer from warehouse to hold, the Treasury Department has construed the words "under the inspection of proper officers" to mean that the goods are to be under the constant surveillance of such officers from the time they leave the warehouse until they reach the ship, such construction should be regarded of weight by a federal court.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 296, 297; Dec. Dig. § 219.*]

8. CUSTOMS DUTIES (§ 121*)—TREASURY REGULATIONS—PENAL OFFENSES.

Where Congress by statute makes penal the violation of any regulation of the Secretary of the Treasury, such regulation may form the basis of a criminal prosecution, though not so if the penal provisions can only be found in the regulation itself.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 121.*]

9. CUSTOMS DUTIES (§ 134*)—CUSTOMS LAW—VIOLATION—INDICTMENT—"ENTRY."

Act Cong. June 10, 1890, c. 407, 26 Stat. 135 (U. S. Comp. St. 1901, p. 1895), provides that if any importer or owner shall make or attempt to make any entry of imported merchandise by means of any fraudulent or false invoice, affidavit, letter or other means, or shall be guilty of any willful act or omission by means whereof the United States shall be deprived of duty or any portion thereof, he shall be fined, etc. Rev. St. § 2979 (U. S. Comp. St. 1901, p. 1953), declares that the owner of goods may re-export the same under the inspection of the proper officers without the payment of any duty thereon. *Held*, that where the defendant was charged with having withdrawn certain imported beans from the warehouse for exportation upon bond and permit, all on January 15, 1902, and the indictment then alleged that the goods were not exported "then and there," but were withheld and concealed with the knowledge of the defendants, the goods would be regarded as "entered," and the duties therefrom due when the owners or the truckmen to whom the custody was intrusted disregarded the limitations put on them and introduced the goods into the unrestricted commerce of the country, though the time within which the goods might be properly exported had not arrived; hence the indictment was not objectionable because it did not allege that defendants concealed or withheld the goods, not only at the time of their removal, but for all the period which was allowed to export them.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 134.*

For other definitions, see Words and Phrases, vol. 3, pp. 2400–2408.]

10. CONSPIRACY (§ 27*)—OVERT ACT—TIME.

The overt act essential to conviction for conspiracy cannot succeed the completion of the contemplated crime.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 38, 39; Dec. Dig. § 27.*]

11. CONSPIRACY (§ 43*)—CONSPIRACY TO DEFRAUD THE UNITED STATES—CUSTOMS DUTIES—"CONTEMPLATES."

Rev. St. § 2979 (U. S. Comp. St. 1901, p. 1953), provides that any owner or importer of merchandise on which the duties have not been paid on giving satisfactory security and obtaining a permit may re-export the same without the payment of duty under inspection of the proper officers. *Held*, that since such section contemplates, not only that the goods be

deposited on ship within the time limited after their removal, but also requires that the shipment shall be under the continued inspection of the customs officers, and Act Cong. June 10, 1890, c. 407, § 9, 26 Stat. 135 (U. S. Comp. St. 1901, p. 1895), makes it a crime for any owner or importer to make or attempt to make any entry of goods without payment of duty, and one contemplates a crime who means to deposit, conceal, or withdraw goods removed from a warehouse for exportation and to introduce them unconditionally into the country effecting a surreptitious entry by which the duties would become due instanter, an indictment charging a conspiracy to effect such result sufficiently charged a crime.

[Ed. Note.—For other cases, see Conspiracy, Dec. Dig. § 43.*

For other definitions, see Words and Phrases, vol. 2, pp. 1485–1486.]

John F. Ehrgott and others were indicted for violating the internal revenue law. On demurrers to indictment. Demurrer to first indictment sustained, and demurrer to second indictment overruled.

Mr. Wemple, for the United States.

Eisman, Levy, Corn & Lewine, for defendants.

HAND, District Judge. The first question is of the indictment for the substantive offenses. The first count must be limited to a violation of section 2987, Rev. St. (U. S. Comp. St. 1901, p. 1959), and the second to section 9, Act June 10, 1890, c. 407, 26 Stat. 135 (U. S. Comp. St. 1901, p. 1895). The demurrer is to both counts.

In the first count the crime alleged consists of fraudulently removing warehoused merchandise from a public warehouse. The count alleges by way of inducement that the beans had been deposited in Brooklyn in warehouse under bond, and then alleges that on a given day the firm withdrew them under a false pretense that they were to be exported. They removed the goods from the warehouse, concealed them in Manhattan, and did not export them. Of the elements going to make up the crime the warehousing of the merchandise is properly alleged, also their removal. The only question which can arise is as to "fraudulently." That word means that the acts must be done with an intent to evade the law, and that intent must, of course, be alleged in detail. The pleader says that the firm withdrew the goods "with the false * * * pretense" that they were to be exported. "False pretense" means at the least that the defendants did not mean to export the goods when they removed them. The only legal disposition of the beans was to export them, and to intend not to export them was to intend to evade the law.

The verbal criticisms I need not notice. First, that there is no allegation of the person to whom the pretense was made; and, second, that Ehrgott personally is not aptly described in the word "firm." When courts to-day interpret any document, even an indictment, with such perverse scholastic ingenuity, they rightly enough bring odium upon the administration of justice in the minds of all sensible people.

The real objection to the count lies in the fact that the removal was completed in the Eastern District of New York, and it was obviously enough because of this that the grand jury tried to bring the case within the concealment clause. However, if the offense was com-

pleted by the fraudulent removal, the subsequent concealment is mere surplusage, relevant as evidence, and then only to show the original intent with which the removal was made. It has no proper place in the indictment. Does the statute, then, create as a crime the concealing of merchandise after its removal from a bonded warehouse? The definition of the crime as distinct from the forfeiture does omit "in," but there is, I think, no change in intent. The statute clearly shows that the offense consists in concealing merchandise in a bonded warehouse, or in taking it out. Of course, there could be no motive in concealing it in such a warehouse, unless you meant eventually to take it out, but yet the concealment might be a first, and at times an effective, step, which Congress might well wish to make criminal in itself, and independently of whether or not it was detected before the removal was consummated. To construe the statute to mean that it was a crime to conceal it after it was removed is less likely. The subsequent concealment would practically always be proof of the fraudulent intent in the removal, but would, as a substantive offense, add nothing to the removal which must precede it. The cases in which you could prove concealment after removal, but not removal, which is a public act, would hardly ever occur. It is most unlikely that Congress meant to cover such cases, even if the words permitted the interpretation. Mr. Wemple suggests that a truck is a warehouse within the act, but I do not think so. The goods no doubt are always in the possession of some quasi official person, and never come into the free commerce of the country, as I shall show below, but, when the statute speaks of a warehouse, it must mean what we usually include as a warehouse, and nothing more. If there be a doubt, I ought to give the benefit of it to the defendant upon a criminal statute. The offense being completed upon the removal, there is no room for section 731 of the Revised Statutes (U. S. Comp. St. 1901, p. 585). I think, therefore, that the first count does not set up any crime committed in the Southern District of New York, and to that count I sustain the demurrer.

The second count arises under section 9 of the act of 1890, and requires some willful act or omission by means whereof the United State is deprived of duties. The count by way of inducement alleges the original deposit of the beans in the warehouse, their withdrawal for exportation upon bond and permit, all on January 15, 1902. It then proceeds to allege that the goods were not exported "then and there," but were "withheld" and "concealed," with the knowledge of the defendants.

The chief object of the defendants' attack is the limitation of the withholding and concealment to the very day of the removal. They say:

"Non constat but that before the time to ship the goods arrived the defendants changed their minds and shipped the goods. If so, the United States was never deprived of the duties. What the pleader should have done is to allege that the defendants concealed and withheld the goods, not only at the time of their removal, but for all the period which was allowed to ship them. That that period was at least a reasonable one is shown by the fact that they had a whole year by the terms of the bond in which to file their proofs of exportation."

This is a substantial criticism of the indictment, and needs answer. The pleader obviously meant to allege that the beans got into the country without paying a duty due upon them. Yet no duty was due on them at all, so long as they were either in bond or in process of exportation. As soon, however, as they were introduced or "entered" into the country, duties became due on them, and that, too, whether the "entry" was surreptitious or honest. Any act which diverted them from the process of exportation and brought them free into the commerce of the country deprived the United States of duties due upon them. The question is whether the process of exportation was interrupted by their being "withheld and concealed" by the defendants. If it was, it is of no consequence that afterwards the defendants might repent and set them in train of exportation again. The crime was complete as soon as the goods were once "entered," whether any one ever knew it or not, and whether or not the defendants at once began again to export them.

The phrase, "under the inspection of the proper officers," is a somewhat vague one, which certainly permits of the interpretation that the goods shall be under the constant surveillance of such officers from the time they leave the warehouse until they reach the ship. This is the interpretation which the executive has placed upon it by articles 834, 838, 841, and 842 of the Treasury Department, which enact a system of licensed truckmen to whom a limited custody of the goods is intrusted for the purpose only of transfer from warehouse to hold. These regulations are controlling with me for two reasons: First, because as a construction of a statute by the executive they are entitled to much weight in a doubtful case; second, because under section 2989 (U. S. Comp. St. 1901, p. 1959) they have the force of law. I cannot very seriously regard section 2979 (U. S. Comp. St. 1901, p. 1953) as doubtful, even if it had to be interpreted for the first time, but the construction of the department would lay any doubts, if I had them. The defendant insists nevertheless that as mere regulations they cannot be the basis of a criminal prosecution (United States v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591), where the substantive offense was defined only in the regulations themselves. In United States v. United Verde Copper Co., 196 U. S. 207, 25 Sup. Ct. 222, 49 L. Ed. 449, however, where it was enacted that it was an offense to violate the regulations of the Secretary, the court did not take the point and proceeded to the discussion of whether the regulation was itself valid. The distinction is whether Congress in a statute makes penal the violation of the Secretary's regulations, or whether such a provision can be only found in the regulation itself. Caha v. U. S., 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415; Re Kollock, 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813. The cases to the contrary in the lower courts are not the law. It is true that section 9 does not make the violation of the regulations penal, nor does any other section. The regulations do, however, prescribe in detail what shall be meant by the phrase, "under the inspection of the proper officers," and in so far they have the force of law under section 2989 (U. S. Comp. St. 1901, p. 1959). The words of the statute have thereupon an authoritative interpretation which is binding on a court. When the question

arises whether the custody of such merchandise given to an importer is limited or free, that question must be determined under the interpretation of these articles whether the inquiry is incidental to the determination of a criminal or a civil proceeding. The regulations require me to regard that custody as limited and even quasi official. If the owners or their truckmen to whom such custody is intrusted disregard the limitations so put upon them, thus introducing them into unrestricted commerce, they have entered the goods which up till then were, as it were, detained at the borders, and they have deprived the United States of duties. The word "concealment" is apt to describe such a diversion, even if temporarily, of the goods from the limited custody to which alone the defendants were entitled. The offense is well laid, and judgment must be respondeat ouster.

The indictment for conspiracy, to be valid, must refer to a violation of section 9, and to that alone, because the overt acts are laid in Manhattan after the removal of goods. Of course, I do not mean that Ehrgott and Newmann might not in Manhattan conspire to violate section 2987 (U. S. Comp. St. 1901, p. 1959) in Brooklyn. That would be a crime committed in Manhattan, but it could not be an overt act in pursuance of that crime to do anything in Manhattan after the beans had come there from Brooklyn. The defendants are clearly right in saying that the overt act cannot succeed the completion of the contemplated crime, and here the crime contemplated would have been completed as soon as the goods once got clear of the warehouse in Brooklyn, if I am right about the scope of section 2987.

Does the conspiracy indictment properly allege a conspiracy to violate section 9, since that is the only crime, an agreement to commit which it does allege? The real attack upon it is the same as upon the second count of the prior indictment, which is that the conspiracy does not allege that the defendants contemplated retaining possession of the beans beyond the period when they must have been shipped for exportation. As I indicated, that would be a serious matter for the indictment, if all the statute required was that the goods should appear upon the ship within a limited time after their removal, but if it requires more than that, and that the shipment shall be under the continued inspection of the customs officers, one contemplates a crime who means to "deposit," "conceal," or "withdraw" them from exportation, and so to introduce them unconditionally in the country. Those acts similarly would effect a deprivation of the United States from its duties arising from the very act of surreptitious entry, and so by this single act the duties would become due and be evaded. An agreement contemplating such a result contemplates a crime.

The overt acts laid are proper parts of the agreement, naturally fitted to carry it into effect.

Let judgment upon this demurrer also be entered respondeat ouster.