Saul SULTAN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16534.

United States Court of Appeals
Fifth Circuit.

Nov. 21, 1957.

Irving M. Wolff, Miami, Fla., for appellant.

O. B. Cline, Jr., Asst. U. S. Atty., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before RIVES, TUTTLE and BROWN, Circuit Judges

## JOHN R. BROWN, Circuit Judge.

Saul Sultan was convicted of conspiracy with Charles Sultan, the bankrupt, to conceal[1] assets, 18 U.S.C.A. § 152, from the Receiver.

By motion to quash the indictment and for judgment of acquittal at the close of all evidence, Saul raised the only substantial question in the appeal: that since the assets were first removed and secreted by the bankrupt alone prior to the date of bankruptcy (June 7, 1954), the offense of concealment was completed either when this was done or at least no later than June 7, 1954, so that Saul, the appellant, by overt acts alleged and proved to have occurred on and after August 8, 1954, could not possibly have conspired to commit an offense already committed.

But this has no merit. The statute itself[2] expressly provides that the offense of concealment is a continuing one and no longer is it, as it was at the time of United States v. Cohn, C.C.N.Y., 142 F. 983, so heavily pressed by Saul, an offense which can be committed only by acts done *after* bankruptcy. The crime is concealment of assets from the specified court officers or creditors, and the acts can be done before, as well as after, bankruptcy. United States v. Fallman, D.C.Mass., 28 F.Supp. 251; Arine v. United States, 9 Cir., 10 F.2d 778, 779. While it has significance as a statute of limitations, Vol. 2, Collier on Bankruptcy (14th ed.) 1152, 1153, § 3284 has substantive consequence as well. Indeed, it is but a legislative recognition of an obvious fact that concealment by its nature is an act which goes on until detected or its consequences are purged. Its purpose is not merely to remove or withdraw assets from the control of the Court, but to do that in such a way that the existence of the assets is not known or their withdrawal detected.

---

1. "Whoever knowingly and fraudulently conceals from the receiver, custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or from creditors in any bankruptcy proceedings, any property belonging to the estate of a bankrupt;

    *     *     *     *     *

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. "The concealment of assets of a bankrupt or other debtor shall be deemed to be a continuing offense until the debtor shall have been finally discharged or a discharge denied, and the period of limitations shall not begin to run until such final discharge or denial of discharge." 18 U.S.C.A. § 3284.

Consequently, while it was essential that Saul knowingly became a participant in a current conspiracy, i. e., the unlawful combination with Charles—a matter now foreclosed by the verdict of guilty upon ample evidence and under proper instructions—the fact that his actions took place August 8, two months after the first furtive removal by Charles of the merchandise, does not, as claimed, make it post-offense conduct which admittedly is beyond a conspiracy charge, Morrow v. United States, 8 Cir., 11 F.2d 256, 259; United States v. Ehrgott, C.C.N.Y., 182 F. 267, 273.

■ If Saul really attacks the sufficiency of the evidence apart from his erroneous notion that the substantive crime of concealment was completed on June 7, 1954, it too is without substance. Saul, a cousin of Charles (the Bankrupt), worked for him as a salesman in the business which folded. Moreover, Saul was and is listed on the bankrupt schedules as a secured creditor. He knew of bankruptcy and the whole evidence, fortified by his written admission, showed that on Sunday, August 8, Charles asked Saul to help him move the merchandise from an old garage (where Charles had secreted it) to a room in the Victor Hotel which was registered in Saul's name. Saul was seen in the hotel in the company of Charles and another co-conspirator, Franco, to whom Saul had, prior to the time the FBI agents searched the room August 20, 1954 and recovered part of the merchandise, sold some of the goods for $500. Saul's knowledge of bankruptcy and the identity of these goods as a part of the inventory of the store, and the furtive manner in which the goods were moved from a place of concealment to a hotel room in his name and from which he sold a substantial part of the merchandise was quite sufficient to warrant the jury's inferring purposeful knowledge and participation in the plan first set in motion previously by Charles.

■■ The Court was at pains to submit (much of it in the very form of Saul's requested charges with only slight editorial changes) the requirement that the jury find that he knowingly participated in the concealment of the bankrupt's assets with an evil intent. To so find, in the face of such strong instructions, meant that the jury had to rule out the possibility that Saul became involved through the mistaken, but innocent, belief that Charles had the right, under Florida constitutional debtor exemption provisions, (see Article X, Sec. 1, Florida Constitution) to an exemption of one thousand dollars worth of personal property. To the extent that that was what was sought by requested Charge No. 7, the question of intent was adequately submitted in the Court's charge. To the extent that it meant to go further and submit the proposition that Saul should be acquitted if they found that Charles operated under the impression and advice of counsel that he had a right to set these assets apart as his constitutional "homestead" exemption, it failed for want of record evidence support. It was stated in terms of Saul being advised by Charles that he (Charles) had and had exercised that right. The record is thin indeed as to what Charles claims to have thought,[3] but there is a complete blank that whatever he thought he ever communicated to Saul. Obviously the Government did not have to prove that Charles did *not* tell Saul that these were exempt goods.

3. On argument it was virtually conceded that if Charles was testifying that his bankruptcy lawyers had advised him he could claim his Florida $1,000 exemption simply by secreting goods without ever filing a schedule of them with the bankruptcy court for suitable orders reflecting their exempt status, the advice was contrary to accepted practice and was erroneous. Added to that is the un-disputed fact that the goods, recovered on the FBI search of August 20, were appraised at $708.90 and the other portion had already been sold by Saul to Franco for $500. At least as to two hundred dollars worth of the goods involved here, neither Charles nor Saul could have had any possible foundation for thinking that the Florida Constitution protected such behavior.

■ The procedural errors complained of are of little moment. A careful examination of the whole record convinces us that the various statements made by the Judge from time to time through the trial were not, and were not meant or understood as, comments on the evidence by him which might be weighed by the jury as it considered the facts. Nearly all of them, when restored to the context from whence they came, were responses of the Court as Court and counsel were engaged in advancing, testing, and countering with arguments, pro and con, on objections or rulings on evidence. This was running colloquy typical of any well-conducted trial in which the Judge seeks to indicate for the benefit both of earnest counsel, whose contentions are being rejected, as well as the appellate court if the point is asserted on an appeal, the basis of his action.

■■ Nor is there any basis for reversal in the claim that upon inquiry by the jury as to aiding and abetting, the Court either gave the wrong response or denied counsel the right to make objections out of the presence of the jury, Lovely v. United States, 4 Cir., 169 F.2d 386, 391, Hodges v. United States, 5 Cir., 243 F.2d 281. The Judge's supplemental instructions correctly reiterated the principles covering conspiracy and then declined to instruct on aiding and abetting, 18 U.S.C.A. § 2, for the obvious reason that aiding and abetting was not in the case. The Judge must submit clear and adequate instructions on the matters at issue, but it is not his function to carry on a one-day law school for the general legal enlightenment of a jury whose function on quite a different matter is soon to cease. Counsel for Saul was not cut off in his objections to this refusal. His contentions on additional instructions were clearly set forth but immediately and properly rejected. We have treated it as though he had had an hour to expound his views further and nothing in either the Judge's words or the setting indicates that Saul's counsel or Saul was prejudicially placed in the hard position of challenging the Judge in the jury's presence. Hodges v. United States, supra.

■ This leaves then the complaint that Saul's written statement, given to the FBI at the time of the August 20 search, was introduced in evidence out of order and before the corpus delicti had been established. The issue here is the narrow one of *timing* only as no contention is or could be made that on the whole case there was not ample corroboration of the extra legal admission.[4] The statement came in evidence in a natural sequence and if, as claimed, there was then a technical defect in preliminarily establishing the corpus delicti, the deficiency was soon removed so that, under no circumstance, could Saul show here that he suffered the prejudicial harm essential to reversal, Fed.Rules Crim.Proc. rule 52(a), 18 U.S.C.A.

Affirmed.

---

4. See Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101; Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192; United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L. Ed. 202; French v. United States, 5 Cir., 232 F.2d 736; cf. Forte v. United States, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.R. 1120.