**In re Jack Campbell MAY, Debtor.**

**No. 78–7083.**

United States District Court,
N. D. Florida,
Tallahassee Division.

Oct. 16, 1980.

Neil H. Butler, Tallahassee, Fla., for debtor.

Philip A. DeLaney, Gainesville, Fla., for Engle Mortgage Co.

## OPINION

N. SANDERS SAULS, Bankruptcy Judge.

The court issued an opinion herein on October 3, 1980, with respect to the status of the entry of the bankrupt's discharge. This opinion is issued to detail the specific allegations with respect to various transactions alleged to have been committed by the bankrupt as being fraudulent, i. e., made with intent to hinder, delay or defraud creditors, and to indicate the applicable provisions of law considered in this court's determination that the matter be referred to the office of the United States Attorney.

As stated in the prior opinion, Engle Mortgage Company, Inc. complained of various transactions by the bankrupt as being made with intent to hinder, delay or defraud creditors.

The gist of the allegations made, taken from the allegations made by Engle in its complaint and the records and minutes of the court in the proceedings, may be stated as follows:

On May 25, 1973, Engle instituted a law suit to recover a money judgment in Alabama arising out of business transactions of the bankrupt and others.

Some five (5) months after this suit was filed, on November 6, 1973, the bankrupt and his father, joined by their wives, transferred certain Florida real estate to a trust designated as the Jack C. May Trust that had been established in late 1971. The pleadings and records do not indicate whether any consideration was received for said conveyance. It was, however, alleged to be fraudulent.

On August 23, 1974, a judgment for some $122,000 was handed down by the Alabama court.

Twenty-eight (28) days prior to the entry of the judgment in Alabama, the bankrupt transferred, on July 26, 1974, a certain leasehold interest to the same trust. The bankrupt received as consideration for this transfer an annuity purchased by the trust providing for the payment to the bankrupt of a fixed sum annually, for life. It was alleged that this annuity and the right to receive the annual payment was then assigned to his father, Earl C. May, either without or for inadequate consideration.

In 1975, Engle instituted suit in Florida to establish its judgment as a Florida judgment. In March of 1976, a judgment was entered establishing the Alabama judgment as a Florida judgment against the bankrupt in the sum of $133,588.65.

In the time between the entry of the judgment in Alabama and the suit to establish the judgment in Florida, the bankrupt made a series of additional transfers.

On April 1, 1975, he transferred certain contractual rights to receive income from a limited partnership, amounting to some $20,000 annually, to American Property Corporation, a property management corporation. The sole stockholder of this corporation was alleged to be the father, Earl C. May. The pleadings and record do not indicate whether any consideration was received for this transfer.

Although the first meeting of creditors was abbreviated due to the inability of the trustee and creditors to examine from the incomplete schedules and statement of affairs, it was indicated that the bankrupt transferred the stock to his father in 1975, as well as his stock in another corporation. The bankrupt remained as president of American Property Corporation and vice president of the other corporation. He continued to draw a salary of some $20,000 annually. In 1975, the bankrupt also transferred other property to his father including a Ferrari automobile.

On October 8, 1975, he transferred a certain joint venture partnership interest to the Jack C. May Trust. Here again, the alleged consideration received was an annuity purchased by the trust which in turn was assigned to the father, Earl C. May.

Finally, it appeared from his schedules that the bankrupt and his wife, who also filed, listed all of their home furniture and furnishings as being owned by another without any further identification of such person.

When Engle sought discovery in aid of execution on its judgment, it discovered that the debtor had no property upon which it might levy.

Turning to the applicable law, in order to generally gain a better understanding of the law with respect to the granting of discharges, it is necessary to briefly review the purpose and theory underlying our statutory scheme for dealing with financially embarrassed persons or estates. It is twofold in theory and purpose. It serves to provide an efficient and equitable distribution of a debtor's assets among his creditors and to furnish deserving debtors with a

fresh start free from the presence and effect of overwhelming debt.

As has often been stated, the primary purpose of the bankruptcy statute (which is indivisibly linked to commerce and credit) is the collection and distribution of the debtor's estate to his creditors. The discharge of the bankrupt is a secondary purpose designed to give the honest debtor the opportunity to reinstate himself in the business world; it is not intended to be available to a dishonest debtor. 1A *Collier* § 14.02. While recognizing that the development of the law in the United States strongly indicates that the original and fundamental purpose of bankruptcy is the liquidation of the debtor's estate and not his discharge, in recent years the discharge aspects have become of great importance. 1A *Collier* § 14.01[6]. As further stated in 1A *Collier* § 14.01[6] at p. 1260.2:

"... Many believe that bankruptcy laws exist primarily as a shelter for debtors, forgetting that the Bankruptcy Act is often invoked, not by the debtor, but by creditors who wish to take advantage of the means which it provides for the collection and liquidation of a debtor's estate.

The possibility that one may be discharged from his debts has a twofold advantage; (1) by carefully providing objections to a discharge the debtor may be encouraged to cooperate with the trustee and the court during the collection and distribution of his property; and (2) for the honest debtor, be he a low salaried wage earner or entrepreneur, a discharge provides him with the incentive to use his skills and talents, and thereby contribute to society even after financial disaster. In order to accomplish the first purpose of the discharge, and to insure that the rehabilitative aspect of it is not abused, careful consideration should be given to each application. Trustees, creditors and other interested parties should be encouraged to oppose the granting of a discharge whenever reasonable grounds exist to believe that a valid objection exists. On the other hand, proper regard should be given to the beneficial effect that Congress, through its legislation, believes may be gained by the discharge provisions."

Given this twofold purpose of equitable treatment for creditors, as well as rehabilitation of a debtor, the statutory scheme also makes provision to assure its goal of equitable treatment of creditors in a variety of ways in view of the serious nature and effect certain types of conduct or actions by the debtor, himself, or other creditors may have tending to impede or thwart this goal. As a result, we have various provisions treating preferences, liens of a judicial or statutory nature, and various types of actual or constructive fraudulent transactions.[1]

---

1. Only in recognition of both of the two fundamental goals can one correlate various sections such as: (1) § 3(a)(1) [fraudulent transfers or concealments as being actual fraud on creditors of such serious nature as to constitute an act of bankruptcy entitling creditors to institute involuntary proceedings to preserve their right to equitable treatment]; (2) § 14(c)(4) [fraudulent transfers or concealments constituting a bar to discharge]; (3) § 14(c)(1), incorporating the first (1st) undesignated subparagraph of 18 U.S.C. § 152 [fraudulent concealments from bankruptcy estate as a criminal offense as well as a bar to discharge]; (4) § 14(c)(1), incorporating the sixth (6th) undesignated subparagraph of 18 U.S.C. § 152 [fraudulent transfer or concealments in contemplation of bankruptcy as a criminal offense as well as a bar to discharge]; (5) § 67(d) [fraudulent transfers voidable and recovery provided]; and, (6) § 70(e) [fraudulent transfers voidable and recovery as provided in accordance with any applicable state law].

As shown above, because of the serious nature and effect that fraudulent transfers and concealments may have, they are dealt with in the act of bankruptcy provisions, the criminal provisions, the discharge provisions, and the avoidance and recovery provisions.

Although closely related by common purpose to the § 14(c) discharge provisions, the avoidance and recovery provisions [(§§ 67(d) and 70(e))] are separate and independent. They enable fraudulent transactions to be undone by an avoidance of such transactions so as to permit creditors to be fairly and equitably treated.

It does not necessarily follow, however, that every denial of discharge is accompanied by an avoidance and recovery or that every avoidance and recovery is accompanied by a denial of discharge. The trustee may not be able to

In turn, the same fundamental consideration underlying these provisions is carried forward and interwoven into the rationale with respect to the other goal of granting discharges. The rationale underlying the granting of discharges to implement the fresh start policy is that, for a debtor to be deserving of such, his creditors must have been fairly dealt with in the past as well as during the bankruptcy proceeding itself. If the creditors have not been fairly treated or dealt with, but, rather, have been subjected to conduct or acts which in effect work fraud upon them, then such activity is demonstrative of the non-deserving status of a debtor for discharge. Thus, the entire scheme of our bankruptcy law is based upon the doing of equity by all whose rights and duties come within its reach and effect.

With respect to fraudulent transactions, it is apparently a common misconception of many courts and attorneys that all transfers or other transactions made by a bankrupt more than one (1) year prior to the filing of a petition are beyond the purview and scope of § 14(c) relating to discharges. Routinely many transactions are never even cursorily examined if they apparently took place more than one (1) year before the date of filing.

The official form schedules and statement of affairs tend to reinforce this treatment. With respect to transfers of property, answers are initially required only with respect to transfers made during the year immediately preceding the filing of the petition. It is only through inquiry of a trustee as to other transactions prior to one (1) year or the furnishing of information by creditors with knowledge of prior transactions that such transactions may come under review.

The main reason for this common misconception is that the most visible sub-section of 14(c) relating to fraudulent transactions—subsection (4), appears to specifically limit its application to *transfers* occurring within the twelve (12) month period preceding the filing of the petition. Overlooked, however, is the fact that this subsection also treats and encompasses *concealments* with intent to hinder, delay or defraud creditors. 1A *Collier*, § 14.45, § 14.46 p. 1409 (cases cited *fn.* 9); 1 Cowans, *Bankruptcy Law and Practice*, §§ 124, 125 [hereinafter *Cowans*].

Concealments may be of a continuing nature. In certain circumstances, a transfer ostensibly completed more than twelve (12) months prior and valid on its face, may nevertheless constitute a secreting or concealment of assets of a continuing nature. 1A *Collier*, § 14.45, p. 1409 (cases cited *fn.* 9); 1 *Cowans*, § 124, § 125; 11 U.S.C. § 1(7) [Act of 1898]. Any such secreting or concealment of assets or transfer in the nature of a secreting or concealment of assets continues until it is discovered and thus brought to an end. *In Re Elliott*, 83 F.Supp. 771 (E.D.Pa.1948); see also *Sultan v. United States*, 249 F.2d 385 (5th Cir. 1957).

Until discovery and its end, a continuation thereof often extends into the twelve (12) month statutory period. Often such continuation also extends into the period after the filing of the petition. If it continues through the twelve (12) month period and into the period after the filing, then, in such event, an additional provision, § 14(c)(1) comes into play. *Sultan v. United States, supra.* Section 14(c)(1) incorporates the first undesignated paragraph of 18 U.S.C. § 152 which is a bankruptcy crime with respect to the secreting or concealment of assets as well as a ground barring a discharge.

avoid and recover for any number of reasons: the property may have been sold to a bona fide purchaser; the trustee may be unable to establish the inadequacy of consideration in the transaction; or, the transfer may have occurred more than one (1) year prior so as not to come within § 67(d). There is, of course, no one (1) year limitation if the trustee proceeds under § 70(e). Yet, such inability to recover does not prevent the transaction from being one made with intent to defraud creditors. A transfer not avoidable may still be a fraudulent transfer or concealment under § 14(c). See, *In Re Freudmann*, 362 F.Supp. 429 (1973).

Prior to the enactment of the new Title 11 of the United States Code [and thus applicable to cases such as this still governed by the prior law], a further provision, without any time limitation, may also be found in the sixth undesignated paragraph of 18 U.S.C. § 152, incorporated also by § 14(c)(1) as a bar to discharge. This provision with an unlimited reach-back time provides another criminal law sanction with respect to:

> "Whoever ... individually ..., in contemplation of a bankruptcy proceeding ..., or with intent to defeat the bankruptcy law, knowingly and fraudulently transfers or conceals any of his property...."

It is to be noted that the potential applicability of this provision has existed only since the criminal provision was amended in 1960 on the recommendation of the Attorney General.[2]  Parenthetically, it is also noted that the reshuffling occasioned by the redrafting of the new law has evidently, whether by inadvertence or design, removed any future potential applicability, after the effective date of the new law. In the new law, the criminal offense sections are no longer used as statutory shorthand to specify grounds for denial of discharge.

Perhaps the most understandable statement of the relevant principles involved may be found in the work of Judge Cowans, *Bankruptcy Law and Practice* (2nd Ed. 1978). For that reason, license is taken to quote at some length from that treatise, beginning in § 122 thereof, as follows:

> " 'c.  The court shall grant the discharge unless satisfied that the bankrupt has * * * (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the peti-

---

**2.** Prior to the 1960 amendment, this sixth (6th) undesignated paragraph dealt only with *agents or corporate officers* who in contemplation of bankruptcy proceedings involving their principals or corporations, or with intent to defeat the bankruptcy laws, knowingly and fraudulently transferred or concealed any *of such principal's or corporation's property.* 2A *Collier* 29.10[1]. [Emphasis supplied].

Upon the Attorney General's recommendation, however, it was amended to specifically include within its purview any transfers or concealments by *individuals* either in contemplation of their own bankruptcy proceedings or with intent to defeat the bankruptcy laws. See, *Comment*, p. 538, 1976 *Collier Pamphlet Edition*, Part 1, Bankruptcy Act and Rules; 2A *Collier* 29.10[1].

In making his recommendation the Attorney General pointed out that the first paragraph of 18 U.S.C. § 152 [incorporated by 14(c)(1)] applied to individuals with respect to concealments from officials of a bankruptcy estate but that, as individuals were not included within the applicability of the sixth paragraph:

> "a higher degree of accountability is required of agents and officers, who are subject to prosecution for the concealment of assets in contemplation of bankruptcy, than is now required of individuals, who are not subject to prosecution for the concealment of assets in contemplation of their own bankruptcy. The amendment removes that inconsistency."

Senate Report No. 974, House Report No. 345, 86th Cong. 2d Sess. (1960).

Truly, a real sleeper, this amendment has apparently received no attention with respect to its applicability. Research has revealed no reported cases dealing with the application of the sixth (6th) paragraph to individuals although earlier cases prior to the amendment have dealt with its application to agents or officers. See, 2A *Collier* § 29.10. The potential applicability of the sixth (6th) paragraph of 18 U.S.C. § 152, as amended, under 14(c)(1) has, however, been obliquely recognized in 2A *Collier*, § 29.05, p. 1162, wherein it is said:

> "Attention should be directed to the sixth paragraph of § 152 which now provides that the concealment of property prior to the commencement of a bankruptcy proceeding may be an offense if done 'in contemplation of a bankruptcy proceeding'."

Prior to this amendment a failure to schedule assets fraudulently transferred prior to filing a petition, followed by a failure to reveal the transfer, had been held to constitute a continuing concealment within the purview of the prohibition of the first paragraph of Section 152 [14(c)(1)]. 2A *Collier* § 29.05[2.2]:

> * Cases decided under and construing the provisions of §§ 14(c)(1) and 14(c)(4) of the old Act and 18 U.S.C. § 152 will remain authoritative under the comparable provisions of the new Title 11 of the United States Code. Section 727(a)(2) is the successor to § 14(c)(4), as well as, § 14(c)(1) with respect to fraudulent transfers and concealments. The provisions of § 14(c)(4), other than transfers and concealments, are now contained in Section 727(a)(4). Except for amendments conforming terminology, the provisions of 18 U.S.C. § 152 remain the same.

tion in bankruptcy, transferred, removed, destroyed or concealed, or permitted to be removed, destroyed or concealed any of his property with intent to hinder, delay or defraud his creditors.'"

The evident purpose of the statute is to deny a discharge to the bankrupt whose plan is to hide his assets in some fashion, go through bankruptcy, obtain a discharge from his debts, retake his property and proceed unhindered by his former creditors. It likewise is designed to withhold relief from the man whose standards have decayed to the point where his view is that if he can not keep his property, his creditors shall receive no benefit from it either. [1 *Cowans* § 122].

\* \* \* \* \* \*

The gist of this ground of objection is intent. This is not the area of accidental or unforeseen harms. The bankrupt himself must have intended the result of hindering, delaying, or defrauding his creditors . . . .

The courts have said that the intent on the part of the bankrupt must be actual as distinguished from constructive intent. Actual intent can be most difficult to prove. Through the time-honored legal devices of inferences and presumptions the courts transcend the problem of the search for proof of actual intent.

It is clear that in the ordinary course of events, people do not give away much of their property or sell it for much less than its true value. A showing of such gifts or transfers for a consideration which is less than fair under the circumstances is in itself a very substantial part of the proof of intent necessary. These factors are not necessarily conclusive, however. There are other factors which give indications of intent. If property is transferred by one who is at the time or who will by means of the transfer become insolvent or if property is transferred to persons from whom it might be suspected that the bankrupt could retake the property, such as relatives or close friends, the justifiable suspicions of the courts may be aroused. This is not to say that all transfers to relatives or transfers by insolvent persons are attended with wrongful intent or even a strong presumption of it. When such transfers are for no consideration or a suspiciously small consideration, however, the presumption can arise. Many relatives do business with each other. If that business is conducted, in the financial sense at least, on an arm's length basis, the resultant fair consideration for transfers does not harm creditors and discharges should not be lost because of such business.

Under Section 14c(4), the making of a fraudulent conveyance by the bankrupt is bad but the making of a preference is not. The law seeks to withhold relief from the debtor who intends harm to his creditors if his actions succeed in this objective. The making of a fraudulent conveyance which is a transfer for no consideration or inadequate consideration under certain circumstances does harm creditors. The assets transferred could be lost to the claims of creditors. [1 *Cowans* § 123].

The wording of the statute limits the concealments or transfers to those occurring within twelve months of bankruptcy. There is however a concept in bankruptcy which has the effect of stretching time limits. Acts producing legal effects may take some time to complete. Sometimes nothing more than the elapsing of a certain period of time is necessary to complete a legal effect. An example of the legal stretching of time from the Act is Section 60a(2) which provides that a transfer shall be deemed to have been made when perfected in a certain fashion. For example, although it does not say so the substance of Section 60a(2) as to personal property transfers is that for purposes of that section, they are made when a security interest is filed. It is not necessarily the date of the physical acts performed by the parties which is determinative. The turning over of property in the physical sense may have occurred long before the 4 month period but if not perfected or completed under the law un-

til a time within the 4 month period, then the act will be regarded as having occurred within the 4 month period.

Transfers with intent to hinder, delay or defraud within Section 14c(4) are treated similarly. If their legal effect does not take place until within the twelve month period, they will be regarded as having occurred within that period. This is particularly true in regard to concealment which is treated as a kind of continuing wrong. The discharge will be denied if a concealment which commenced before the twelve month period continues within the period .... [1 *Cowans* § 1247].

The concealment of assets having been covered under Section 14c(1) as a ground of objection to discharge, it is most pertinent to inquire whether this is mere duplication. To some extent the same act may comprise ground for denial of a discharge under both sections. It must be remembered that the concealment mentioned in Section 152 of Title 18 of the United States Code, and thus covered by Section 14c(1) is concealment in a bankruptcy proceeding. This would necessarily mean concealment of assets commencing or continuing during the pendency of a bankruptcy proceeding. There is no such requirement in Section 14c(4). A concealment that commenced prior to or within the twelve month period and ended within that period and before bankruptcy will be covered by Section 14c(4). So will a concealment commencing subsequent to filing ...." [1 *Cowans* § 125];

■ There is necessarily some duplication under § 14(c)(1) and § 14(c)(4) to the extent that the same act or conduct may constitute a ground for denial of discharge under either section and the same requisite intent is necessary under either section. In fact a question of whether a particular transaction is intentional and fraudulent, either in fact or as a matter of law, may come up in a wide variety of ways. It may constitute an act of bankruptcy under § 3(a)(1), one of the enumerated events of such a serious nature as to entitle creditors to institute involuntary proceedings to gain a forum to preserve their right to equitable treatment. It may constitute a transaction voidable by creditors and thus by a trustee under § 67(d) and § 70(e) whereby the subject property may be equitably distributed among creditors. It may constitute a bar to discharge under § 14(c)(4). See, *In Re Freudmann*, 362 F.Supp. 429, 433 (2nd Cir. 1974). It may also constitute a criminal offense as well as a bar to discharge under § 14(c)(1).

As before noted, § 14(c)(1) cross references to 18 U.S.C. § 152. Section 152 of Title 18 is a congressional attempt to cover all of the possible methods by which a debtor or any other person may attempt to defeat the intent and effect of the bankruptcy law through any type of effort to keep assets from being equitably distributed among creditors. *Stegeman v. United States*, 425 F.2d 984, 986 (9th Cir. 1970); 2A *Collier* § 29.04[2].

The bulk of the criminal provisions are devoted to protecting creditors against fraudulent conduct. This is done either by direct attack, as in the first paragraph of § 152 denouncing fraudulent concealments and transfers, or indirectly, as in the second paragraph denouncing perjury by the giving of false oaths and accounts. Whether direct or indirect, the principal purpose of the various provisions is to promote commercial honesty. 2A *Collier* § 29.02[1].

■ Under § 14(c)(1), all of the practices and efforts designated as criminal offenses are incorporated as additional grounds in bar of discharges. As a result, a person may be subjected to a criminal penalty and also be denied a discharge in consequence of his actions to hinder, delay or defraud his creditors.[3]

---

**3.** A fraudulent concealment under either § 14(c)(1), 18 U.S.C. § 152 or § 14(c)(4), in order to bar a discharge, being a civil matter, need be shown only by a preponderance of credible evidence. In a criminal prosecution for fraudulent concealment under Title 18, however, as with all criminal matters, guilt must be established beyond a reasonable doubt. 1A *Collier* § 14.24; 2A *Collier* 29.05[4]. It is not necessary in a discharge proceeding that a

The criminal provisions proscribe certain actions done "knowingly and fraudulently". The fraudulent transfer and discharge provisions treat actions done "with intent to hinder, delay or defraud" creditors.

Both phrases are terms of art with the same meaning. As terms of art deriving their meaning as a matter of historical legal learning and usage, they describe a type of conduct incapable of precise definition due to the myriad and varied factual circumstances which may arise. Both linguistic formulas characterize intentional acts or a deliberate course or pattern of conduct carried on for the purpose of defrauding creditors by transfers or concealments designed and intended to withdraw assets from the reach of their creditors or to withhold such assets from their estates for equitable distribution among creditors. The conceptual essence of both phrases is the intentional and unjust placing of property beyond the reach of creditors. See, *In Re*

*Hale*, 274 F.Supp. 813 (W.D.Va.1967); *McLaughlin*, 4 U.Chi.L.Rev. 369, 385–386. An evil motive is not required. The requirement is merely "an intentional act prejudicial to creditors". *United States v. Ressler*, 433 F.Supp. 459 (S.D.Fla.1977).

As transfers or concealments must be done "knowingly" or "with intent" to place property beyond the reach of creditors under § 14(c)(1), 18 U.S.C. § 152 or § 14(c)(4), respectively, helpful analogies may be drawn from the decisions discussing the requisite mental element, as well as what constitutes a concealment[4] under either of the sections. 1A *Collier*, §§ 14.47, 14.51. Under each of these sections, there must be proof of an actual intent to place property beyond the reach of creditors as distinguished from an intent constructively presumed without any factual basis with respect to such intent.[5]

■ Such intent may be proved, of course, by circumstantial evidence. *In Re*

---

prior conviction have been obtained for the offense of fraudulent concealment. It is sufficient to prove in the discharge proceeding that the fraudulent concealment was committed. 1A *Collier* § 14.17[2].

Title 18 U.S.C. § 3284 provides specifically that concealments shall be deemed to be continuing offenses and that the statute of limitations in a concealment case does not begin to run until there has been either a discharge or a denial of discharge. See, 2A *Collier* § 29.05[2.-2] (also cases cited fns. 26 and 27). As has been stated by the 5th Circuit Court of Appeals:

"Indeed, it [18 U.S.C. § 3284] is but a legislative recognition of an obvious fact that concealment by its nature is an act which goes on until detected or its consequences are purged. Its [concealment] purpose is not merely to remove or withdraw assets from the control of the Court, but to do that in such a way that the existence of the assets is not known or their withdrawal detected." *Sultan v. United States*, 249 F.2d 385, 386 (5th Cir. 1957).

4. The word concealment may describe or mean various things: for instance, it may mean to secrete, hide or withdraw some physical asset from observation; to cover or keep some physical asset from sight; to prevent discovery of some physical asset or prior transaction; or to withhold knowledge of and thus secrete some physical asset or prior transaction. See, *United States v. Mathies*, 203 F.Supp. 797 (W.D.Pa. 1962); *Burchinal v. United States*, 342 F.2d 982 (10th Cir. 1965). Here again it should be em-

phasized that in the latter two above stated senses, certain types of transfers, themselves, may constitute a concealment. *In Re Quackenbush*, 102 F. 282 (N.D.N.Y.1900); *In Re Baxter*, 27 F.Supp. 54 (S.D.N.Y.1939); *In Re Perkins*, 40 F.Supp. 114 (D.C.N.J.1941); *Matter of Vecchione*, 407 F.Supp. 609 (E.D.N.Y.1976). If such concealment is present, it matters not how long before the filing of the petition the suspect transfer occurred because the act of concealment is a continuous one. *Matter of Vecchione, supra*; see also, *Sultan v. United States*, 249 F.2d 385 (5th Cir. 1957).

5. An example of fraudulent intent constructively presumed without a factual basis with respect to intent is that found under the first three clauses [(a), (b) and (c)] of § 67(d)(2) when lack or inadequacy of consideration of a transaction is established. Once the absence of fair consideration is established by the evidence, then fraudulent intent is constructively presumed without regard to actual intent. In other words an objective standard is utilized rather than a subjective standard.

It is also noteworthy that the phrase "intent to hinder, delay, or defraud his creditors" reads in the disjunctive. In certain cases only one of these three motivating factors is required. Accordingly, it is not always necessary that intent to defraud be proved. If intent to hinder and delay is established, it is sufficient. *In Re Rowe*, 234 F.Supp. 114, 116 (E.D.N.Y.1964); *In Re Perlmutter*, 256 F. 862, 896 (D.C.N.J.1919).

*Freudmann, supra.* Indeed, such proof is usually the only means by which the required mental element may be established. Although actual intent can be most difficult to prove, "[t]hrough the time honored devices of inferences and presumptions the courts transcend the problem of the search for proof of actual intent". 1 *Cowans, supra;* see also, 1A *Collier* §§ 14.24, 14.47; 2A *Collier* § 29.05[2.1]. As stated by the court in *Matter of Vecchione,* 407 F.Supp. 609, at p. 615:

"The analysis begins with a statement of the obvious. Persons whose intention is to shield their assets from creditor attack while continuing to derive the equitable benefit of those assets rarely announce their purpose. Instead, if their intention is to be known, it must be gleaned from inferences drawn from a course of conduct. *In Re Saphire,* 139 F.2d 34, 35 (2 Cir. 1943); *In Re Freudmann,* 362 F.Supp. 429 (S.D.N.Y.1973), aff'd, 495 F.2d 816 (2 Cir. 1974)."

The circumstantial evidence of intent involved in the law of fraudulent transactions has long been categorized by certain patterns of conduct called for convenience "badges of fraud". *In Re Freudmann,* 362 F.Supp. 429, 433 (2d Cir. 1974). Such indicators or badges, when established either singularly, but more often in combination, may justify the inference of the requisite intent to hinder, delay or defraud creditors. By way of example, several of the most important of such factors or badges indicating actual fraudulent intent are:

(1) the lack or inadequacy of consideration;

(2) the family, friendship or close associate relationship between the parties;

(3) the retention of possession, benefit or use of the property in question;

(4) the financial condition of the party sought to be charged both before and after the transaction in question;

(5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and,

(6) the general chronology of the events and transactions under inquiry. *Matter of Vecchione, supra; United States v. Ressler, supra; In Re Freudmann, supra; In Re Cadarette,* 601 F.2d 648 (2nd Cir. 1979); 1 *Cowans* § 123, *supra.*

In the instant case, the allegations made with respect to the transfers and the circumstances reflected by the record reasonably fell within several of the foregoing enumerated indicators or badges mandating the referral of the matter to the office of the United States Attorney for further investigation. The transactions involved each apparently occurred more than one (1) year prior to the filing of the petition, however, a review of the authorities clearly revealed that appropriate investigation should be made to determine the precise nature of the transactions and thus the applicability of the law thereto.

Transfers completed more than one (1) year prior to the filing of a petition, unless they are of such nature as to constitute a continuing concealment of assets, cannot be the subject of any objection to discharge under § 14(c). But, as previously noted hereinabove, a transfer, like a false oath in certain circumstances, may also constitute a fraudulent concealment continuing into the statutory one year period of § 14(c)(4) or the period after the filing under § 14(c)(1). 1A *Collier* §§ 14.22, 14.45, p. 1409; 2A *Collier* § 29.10; 1 *Cowans* §§ 124, 125; *Green v. Toy,* 171 F.2d 979 (1st Cir. 1949); *Duggins v. Heffron,* 128 F.2d 546 (9th Cir. 1942), cc. 115 F.2d 519 (9th Cir. 1940); *Farmers' Saving Bank v. Allen,* 41 F.2d 208 (8th Cir. 1930); *In Re James,* 181 F. 476 (4th Cir. 1910); *Matter of Vecchione,* 407 F.Supp. 609 (E.D.N.Y.1976); *In Re Elliott,* 83 F.Supp. 771 (E.D.Pa.1948); *In Re Perkins,* 40 F.Supp. 114 (D.C.N.J.1941); *In Re Baxter,* 27 F.Supp. 54 (S.D.N.Y.1939); *United States v. Fallman,* 28 F.Supp. 251 (D.Mass.1939); see also, *In Re Davis,* 404 F.2d 312 (2nd Cir. 1968); *Burchinal v. United States,* 342 F.2d 982 (10th Cir. 1965); *Sultan v. United States,* 249 F.2d 385 (5th

**628**

Cir. 1957); *In Re Quackenbush,* 102 F. 282 (N.D.N.Y.1900).

A reading of the foregoing authorities clearly establishes that many transfers, because of the strong inferences of the surrounding facts and circumstances, are held to be continuing concealments or implied secret trusts. These are cases where property is transferred to persons or entities from whom it might be suspected that the bankrupt could retake the property, such as relatives, close friends, associates, advisors or manipulated corporations.

In *Green v. Toy, supra,* a transfer of property to a corporation ostensibly owned by relatives over one (1) year prior to the filing of the petition was held to constitute a continuing concealment. In *Duggins v. Heffron, supra,* a transfer of property to the bankrupt's wife some twelve (12) years prior to the petition was held to constitute a concealment continuing into the statutory one (1) year period.

*In Re Elliott, supra,* involved the taking of title in the name of the wife over three (3) years prior to the petition at a time between the filing of a suit for damages against the bankrupt and the entry of judgment. The court held that the legal title was subject to a constructive trust for the bankrupt's creditors, that the transfer amounted to a fraudulent continuing concealment, and that his discharge should be denied.

The court in *In Re Perkins, supra,* held that "[f]raudulent transfers of property beyond the time limitation of twelve (12) months set forth in [§ 14c(4)], may nevertheless constitute a concealment of property to defraud creditors within its terms provided the transfer is made on secret trust, express or implied, title to be resumed when the danger of attack by creditors has passed." In *Perkins,* the inheritance of a son was appropriated by his father upon its receipt some eight (8) years before the filing of the son's petition. Under the circumstances therein, it was, however, held that no continuing concealment or secret trust existed.

In *In Re Baxter, supra,* a transfer of property to the bankrupt's daughter some two (2) years prior to the filing of his petition was held to constitute a continuing concealment for the bankrupt's benefit. Being indebted at the time, the transfers, for inadequate consideration, left him without assets but he remained in possession and continued to use the property. The court held the transaction to have "all the marks of a transfer in fraud of creditors with a secret trust in favor of the bankrupt".

In *Matter of Vecchione, supra,* a series of various transfers of property to the bankrupts' wives up to seven (7) years prior to the filing of the petitions were held to constitute continuing concealments. Determining that the transfers absolute on their face were not absolute in fact, the court, in an illustrative opinion, held that the cumulative effect of the courses of conduct examined gave rise, as a matter of law, to only one permissible inference—"that both bankrupts knowingly and fraudulently attempted to place their assets beyond the reach of their creditors while retaining the equitable enjoyment of those assets." Inasmuch as the concealments had continued until after the filing of the petition and § 14(c)(1) was thus applicable, the court, having found a continuing concealment under § 14(c)(1), found it unnecessary to also make findings under § 14(c)(4). Having continued into the one (1) year period, § 14(c)(4), of course, was also clearly applicable.

In view of the authorities and principles of law set out and discussed above, the matter of discharge in the case at bar was referred to the office of the United States Attorney.

Finally, as a matter of sound judicial administration it appears appropriate that in the event the United States Attorney returns any report of probable cause under § 14(d) of the Act and 18 U.S.C. § 3057 an order of recusal should be entered to enable any further proceedings with respect to the matter to be heard by a judge of this court other than the referring judge.