**In re Gerald KAISER, Debtor.**

**Chester B. SALOMON, as Trustee of the Estate of Gerald Kaiser, Debtor, Plaintiff-Appellee,**

**v.**

**Gerald KAISER, Defendant-Appellant.**

**Chester B. SALOMON, as Trustee of the Estate of Gerald Kaiser, Debtor, Plaintiff-Appellee,**

**v.**

**Gerald KAISER and Joan Kaiser, Defendants-Appellants,**

**Harry Gorowitz and Yetta Gorowitz, Defendants.**

**No. 83 Civ. 1384 (HFW).**

United States District Court,
S.D. New York.

April 11, 1983.

Ruben, Schwartz, Meyer, & Schnall by Brett J. Meyer, Seymour J. Silberberg, New York City, for defendants-appellants.

Chester B. Salomon, P.C. by Chester B. Salomon, David M. Green, Cindy Tzerman, New York City, for plaintiff-appellee.

## MEMORANDUM DECISION

WERKER, District Judge.

This is an appeal from a judgment of the United States Bankruptcy Court for the Southern District of New York, Burton R. Lifland, Bankruptcy Judge. The judgment, dated January 17, 1983, was entered following the consolidated trial of two adversary proceedings before Bankruptcy Judge Joel Lewittes on December 2, 3, 5, and 6, 1982.

On February 11, 1981, Gerald Kaiser filed a voluntary petition in bankruptcy under chapter 7 of the Bankruptcy Code. Thereafter, Chester B. Salomon was appointed trustee of the debtor's estate. The trustee commenced the first adversary proceeding in February 1982. That complaint, which was amended in September 1982, sought to prevent the discharge of the debtor pursuant to 11 U.S.C. § 727(a)(2)(A) and (a)(4)(A) based upon the allegations that the debtor transferred certain of his property with the intent to hinder, delay or defraud his creditors within one year prior to the date of the filing of the petition and that the debtor knowingly made false statements under oath. The second adversary proceeding was commenced by the filing of a complaint on April 1, 1982. This proceeding was brought against the debtor and Joan Kaiser, his wife, for the purpose of setting aside alleged fraudulent transfers made by the debtor traceable into a parcel of real property located at 6450 S.W. 102nd Street, Miami Florida ("the Florida premises"), title to which was held in the name of Joan Kaiser. 11 U.S.C. §§ 544(b), 548(a)(1)(2).

Following a consolidated trial of these adversary proceedings, Bankruptcy Judge Lewittes found that the conveyances made by the debtor were fraudulent and that the debtor's statements were false oaths. Judge Lewittes resigned from the bench before a judgment was signed. The case was then assigned to Bankruptcy Judge Lifland who signed a judgment imposing a constructive trust upon the Florida property and denying the debtor's discharge. It is from this judgment that the Kaisers appeal.

Relying upon the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), appellants argue that the bankruptcy court lacked jurisdiction to enter the judgment after December 24, 1982, the expiration date of the second stay of the Supreme Court's judgment holding that the broad grant of jurisdiction to bankruptcy courts contained in § 241(a) of the Bankruptcy Act of 1978 was unconstitutional. *Id.* 102 S.Ct. at 2880.

The Supreme Court held that its decision was to apply only prospectively and originally stayed its judgment until October 4, 1982. The stay was further extended until December 24, 1982. *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* —— U.S. ——, 103 S.Ct. 199–200, 74 L.Ed.2d 160 (1982). The Court refused to extend the stay beyond December 24, 1982.

Since the expiration of the *Northern Pipeline* stay, the district courts have been adjudicating bankruptcy cases and proceedings pursuant to a uniform Emergency Rule for the Administration of the Bankruptcy System, adopted in this district on December 15, 1982. The Bankruptcy Emergency Rule took effect upon the expiration of the Supreme Court's stay. The Emergency Rule provides for various methods of review in the district courts of certain orders and judgments entered in the bankruptcy court in "related proceedings." The Emergency Rule defines related proceedings as follows: "related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court. Related proceedings include, but are not limited to, claims brought by the estate against parties who have not filed claims against the estate." Emergency Rule ¶ (d)(3)(A). In related proceedings, a bankruptcy judge may not enter judgments or dispositive orders, but must submit findings, conclusions, and a proposed judgment or order to the district judge, unless the parties consent to entry of the judgment or order by the bankruptcy judge. Emergency Rule ¶ (d)(3)(B).

However, paragraph (d)(3)(A) of the Emergency Rule explicitly provides that "[r]elated proceedings do not include: ... proceedings to set aside preferences and fraudulent conveyances." Under the Rule, the judgment entered against the debtor became effective upon entry by the clerk of the bankruptcy court, "unless stayed by the bankruptcy judge or a district judge." Emergency Rule ¶ (d)(2). The stay imposed on the judgment by Bankruptcy Judge Lifland was dissolved by him after the debtor failed to meet the conditions of the stay. Leave to continue the stay was denied by this court on April 5, 1983. However, at the hearing on April 5, this court ruled that Mr. Kaiser and his family could occupy the Florida property until a decision on the appeal was made.

In *Q1 Corporation v. Reichenstein,* 83 Civ. 0525 (E.D.N.Y. March 22, 1983), Judge Altimari concluded that the district court had jurisdiction over bankruptcy matters, including related proceedings, pursuant to Sections 404 and 405 of the Bankruptcy Reform Act of 1978 and 28 U.S.C. § 1471(a)(b). After concluding that the court had jurisdiction, Judge Altimari upheld the validity and application of the Emergency Rule to the related proceeding before him. *Q1 Corporation v. Reichenstein, supra,* at 16, 22–23. This court agrees with Judge Altimari's well reasoned opinion.

The appellants argue that the Emergency Rule is unconstitutional insofar as it permits bankruptcy judges to set aside fraudulent conveyances upon their own authority. The court finds this argument to be without merit and finds the Emergency Rule's provision in this regard to be valid.

Assuming arguendo that the proceedings in the bankruptcy court were related proceedings, this court would have approved the findings of Judge Lewittes and the judgment signed by Judge Lifland had they been submitted in the form of proposed findings and a proposed judgment pursuant to paragraph (d)(3)(B) of the Rule. *See also* paragraph (e)(2)(B) of the Rule.

■ After review of the trial record and Judge Lewittes findings of fact and conclusions of law, the court finds that there was ample evidence to support Judge Lewittes finding that Gerald Kaiser engaged in fraudulent transfers of property for purposes of defrauding his creditors.

The record reveals that over the years Gerald and Joan Kaiser have resided on various properties title to which has been in the name of Joan Kaiser notwithstanding that Mr. Kaiser's funds were used for acquisition, maintenance, and improvement.

In 1970, Mr. Kaiser paid $12,000 to his wife's parents for the transfer into her name of title to property in Lawrence, New York. The debtor had been paying the mortgage on this property since 1968. Up to the time the property was sold in 1978, Mr. Kaiser's funds were used to pay the mortgage, costs of improvements and expenses incurred in connection with this property (Findings ¶¶ 13–16, 169).

In October 1978, the real property located at 6450 S.W. 102nd Street, Miami, Florida was purchased in the name of Joan Kaiser. The purchase price was $295,000. The down payment was $50,000 and was paid in cash solely with Gerald Kaiser's funds. The balance was covered by a purchase-money mortgage given by "Gerald Kaiser and Joan Kaiser, his wife," securing a promissory note in the amount of $245,000, given by the Kaisers to the sellers (Findings 34–36). From November, 1978 to February, 1981, monthly mortgage installments were paid with Gerald Kaiser's funds. The payments for maintenance and improvements on the premises were made with Mr. Kaiser's funds.

The payments made by Mr. Kaiser on the Florida property were made (1) directly from business entities under his control, (2) from accounts in the name of Joan Kaiser, Joan and Gerald Kaiser, the sole funding of these accounts was from Gerald Kaiser's business entities (3) from cash received from Mr. Kaiser's businesses, by check pay-

able to cash, Gerald Kaiser, or Joan Kaiser. Judge Lewittes found that the practice of paying obligations from corporate or nominee accounts was designed to avoid the debtor's creditors (Findings ¶¶ 72–77, 168).

Appellants argue that since the trustee failed to establish actual fraudulent intent by direct evidence, the bankruptcy court could not have concluded that the subject transfers were made with actual intent to defraud creditors.[1] By its nature, fraudulent intent is not susceptible to direct proof. *De West Realty Corp. v. I.R.S. of United States,* 418 F.Supp. 1274, 1279 (S.D.N.Y. 1976); *United States v. Ressler,* 433 F.Supp. 459, 464 (S.D.Fla.1977). The text *Collier on Bankruptcy* states that "the finding of the requisite [fraudulent] intent may be predicated upon the concurrence of facts which, while not direct evidence of actual intent, lead to the irresistable conclusion that the transferor's conduct was motivated by such intent. Rarely will a fraudulent transferor disclose his fraudulent intent in a mode capable of direct proof." 4 *Collier on Bankruptcy,* ¶ 548.02[5] at 548–33 (15th ed.).

In *Matter of Vecchione,* 407 F.Supp. 609 (S.D.N.Y.1976), the district court pointed out in an analogous connection:

> The analysis begins with a statement of the obvious. Persons whose intention it is to shield their assets from creditor attack while continuing to derive the equitable benefit of those assets rarely announce their purpose. Instead, if their intention is to be known, it must be gleaned from inferences drawn from a course of conduct. *Id.* at 615. (citations omitted).

With respect to proof of intent, it has been stated:

> [i]n dealing with the actual intent required by section 548(a)(1), it is to be remembered that an intent to hinder or to delay is condemned equally with an intent to defraud, i.e., an intent not to pay creditors at all... Circumstances

---

1. Bankruptcy Judge Lewittes declined to decide whether New York or Florida law applied to the adversary proceedings before him because

"for purposes of these proceedings these laws do not diverge." (Transcript at 14).

from which courts have been willing to infer fraud include concealment of facts and false pretenses by the transferor, reservation by him of rights in the transferred property, his absconding with or secreting the proceeds of the transfer immediately after their receipt, the existence of an unconscionable discrepancy between the value of property transferred and the consideration received therefor, the fact that the transfer was made to satisfy or secure a debt long since forgiven, the fact that the transferee was an officer or was an agent or creditor of an officer of an embarassed corporate transferor, the creation by an oppressed debtor of a closely-held corporation to receive the transfer of his property. While no finding of fraud can be predicated solely on the fact that a transaction resulting in a transfer of a debtor's property is between relatives or members of a family, such transactions are generally subjected to close scrutiny when challenged by the trustee, and the relationship of the parties in conjunction with other circumstances often makes a trustee's case compelling notwithstanding the absence of direct evidence of fraud.

4 *Collier on Bankruptcy, supra,* ¶ 548.02[4] at 548–30, ¶ 548.02[5] at 548–34–39; *see also In re May,* 12 B.R. 618, 627 (D.C.N.D.Fla. 1980); *In re Vaniman International, Inc.,* 22 B.R. 166, 181–182 (Bkrtcy.E.D.N.Y.1982).

The evidence shows that at the time of the purchase of the Florida property in October 1978, Mr. Kaiser's liabilities amounted to at least $494,901.32 and most of these liabilities were in existence at the time of the trial (Findings ¶¶ 98–101, 105). The record disclosed various judgments in New York against Gerald Kaiser which remained unsatisfied at the time of the purchase.

The period of Mr. Kaiser's indebtedness covered the time period of the mortgage, maintenance and improvement payments on the Florida home (Finding ¶ 13). Since Mr. Kaiser admitted that he had paid virtually no federal income tax since 1976, Judge Lewittes was correct in concluding that the greater portion of the debt owing to the Internal Revenue Service remained due at the time that the bankruptcy petition was filed (Findings ¶¶ 100, 113). Mr. Kaiser incurred other obligations from October 1978 up to the filing of his petition. *See* Findings ¶¶ 124, 122–123, 114, 117–120, Transcript at 555.

The bankruptcy court properly concluded that the subject transfers to Joan Kaiser were made without consideration. This conclusion was amply supported by the evidence (Findings ¶¶ 164–167, 107–108).

Further evidence of Mr. Kaiser's fraudulent intent emerged from his practice of asserting and retaining rights of ownership in property purportedly transferred, and employing the property for his personal use and benefit. The trial record contains several examples of attempts by the debtor to place his property where he can still enjoy it and at the same time require his creditors to remain unsatisfied. *Bentley v. Young,* 210 F. 202 (S.D.N.Y.1914), *aff'd,* 223 F. 536 (2d Cir.1915); *see* Findings ¶¶ 82, 86).

Gerald Kaiser has repeatedly exercised dominion and control over real property held in the name of his wife. Beginning in the 1960's when the Kaisers' home was located in Brooklyn, New York, a mortgage was executed thereon by the debtor's wife to secure a business loan made to the debtor (Finding ¶ 11). In 1970 and 1971, the two Hodas mortgages were executed on the Lawrence property also for the debtor's sole benefit (Findings ¶¶ 19–20). In 1972, Joan Kaiser granted the Internal Revenue Service a mortgage to secure an individual tax debt of her husband (Findings ¶¶ 22–23). Joan Kaiser agreed to grant a mortgage on the Florida premises to secure a loan to a law firm in which Mr. Kaiser had a substantial partnership interest (Finding ¶ 61).

■ Courts will not sanction the use of wives as conduits through which funds of a debtor may be tapped while the same funds remain unreachable by creditors. *Matter of Vecchione, supra; In re Gugliada,* 20 B.R. 524 (Bkrtcy.S.D.N.Y.1982); *United States v. St. Mary,* 334 F.Supp. 799 (E.D.Pa.1971); *In re Davis,* 404 F.2d 312 (2d Cir.1968).

That Mr. Kaiser considered the Florida property his own militated in favor of such a finding. Mr. Kaiser included the Florida property among his assets on a January 30, 1980 personal financial statement delivered to a Florida bank, notwithstanding his wife's legal title (Finding ¶ 63).

In *In re Walter,* 67 F.Supp. 925 (S.D.N.Y. 1946), a bankrupt, prior to the filing of his petition, gave sworn testimony in supplementary proceedings that his assets included "equity in home, if any." *Id.* at 926. By this representation, the court found that the bankrupt considered the property his own, notwithstanding that title was held in the name of his wife. His wife had no money of her own, and, after the delivery of the deed, all tax and mortgage payments on the property were made from the bankrupt's personal funds. The court found that the cash payment for the purchase of the property was made largely with the bankrupt's personal funds at a time when he was indebted. The court held that the bankrupt retained a beneficial interest in the property. His fraudulent concealment resulted in the denial of his discharge. *Id.* at 926.

In the instant case, the evidence revealed that Joan Kaiser earned no income for the period from 1960 through 1981. She had no investments and held no significant assets in her name other than the Lawrence and Florida properties. Virtually all the payments for the purchase, maintenance and improvements of the subject premises were made by Gerald Kaiser from his own funds while he was indebted (Finding ¶ 65) (Transcript 21–22).

The mortgage on the Florida property was executed jointly by Gerald Kaiser and his wife as mortgagor and contained a statement by Gerald Kaiser that: "Mortgagor hereby covenants with Mortgagee that Mortgagor is indefeasibly seized with the absolute and fee simple title to said property; that Mortgagor has full power and lawful authority to sell, convey, assign, transfer and mortgage the same." (Transcript at 301, 303); (Finding ¶ 35).

In addition, as admitted by Mr. Kaiser, deductions for real estate taxes on the Florida property were taken by him in computing taxable income on his federal income tax returns for the years 1979 through 1981 (Findings ¶¶ 133–134), despite the fact that he was not entitled to these deductions since he was not the fee owner.

Alan Weissman, the attorney representing the purchaser in connection with closing of the Florida property, considered Mr. Kaiser to be the purchaser and on several occasions represented Gerald Kaiser as the purchaser (Findings ¶¶ 32–33). Mr. Kaiser certainly does not refute this.

▮ The shifting of the debtor's assets to a corporation wholly owned, organized or controlled by the debtor is another badge of fraud. *See In re Checkmate Stereo & Electronics, Ltd.,* 9 B.R. 585, 612 (Bkrtcy.E.D.N.Y.1981), *mod. & aff'd,* 21 B.R. 402 (D.C.E.D.N.Y.1982). In the instant case, the debtor did not maintain a bank account in his own name. Rather he made use of corporations he created as conduits through which his personal funds moved (Findings ¶¶ 70, 73–88). 4 Guys & 2 Gals, Inc. was one of the corporations to which Mr. Kaiser's funds were transferred and out of which payments for household expenses were made, some of which were on account of the Florida property. From its inception until at least March 13, 1981, the 4 Guys & 2 Gals, Inc. account was used by Mr. Kaiser as a personal bank account, from which he received checks denominated "payroll" within the one year period prior to the filing of his bankruptcy petition. Equity Acquisitions, Community Mart and Centennial Funding Corporation were other entities owned by Kaiser into which his personal funds flowed. Some of these funds were used to pay debts incurred on the Florida property (Findings ¶¶ 72–74, 75–77, 83, 85–86).

The facts show Gerald Kaiser's exercise of dominion and control over the Florida property and lead to the conclusion that Mr. Kaiser had his wife hold title to the Florida property and made payments for the purchase, maintenance and improvement of the property with the intent to shield the prop-

erty and defraud his creditors (Finding ¶ 185, Conclusion of Law ¶ A). The trustee has shown that the transferor acted under circumstances that preclude any reasonable conclusion other than that the purpose of the transfer was fraudulent as to his creditors. 4 *Collier on Bankruptcy,* ¶ 548.02[5] at 548–33–34 (15th ed.). Moreover, the transfers were for less than a reasonably equivalent value and the debtor was clearly insolvent on the date of the transfers. 11 U.S.C. § 548(a)(2)(A)(B)(i).

■ Appellants argue that the bankruptcy court erred in denying the debtor the benefit of the Florida Homestead exemption. Since title to the Florida property was in the name of Joan Kaiser at the inception of the bankruptcy proceeding, the debtor elected the scheme of federal rather than state exemptions, 11 U.S.C. § 522(b), thereby failing to avail himself of the homestead exemption, because "he had no way of knowing that the resultant suits and adverse judgments would effect the change in the status of title." Appellants' Brief at 35. Therefore, it is contended that the debtor should be allowed to make the requisite amendments to enable him to claim the Florida property as exempt. The court finds the appellants arguments to be without merit and sees no basis upon which Mr. Kaiser is entitled to the Florida homestead exemption. Mr. Kaiser on several occasions declared, under penalty of perjury, New York to be his domicile. The bankruptcy court was correct in prohibiting Mr. Kaiser from amending his declaration of domicile. *See also* the comments of Judge Lewittes at the opening of the trial ("When and if actual fraud is shown to the satisfaction of this court, Kaiser will lose his exemption. But, he also will be excepted from discharge, which is probably of far more grave concern to him.") (Transcript at 13, 6–14).

■ Appellants argue that since the "end result below would achieve a fantastic windfall for general unsecured creditors ...," the estate should be entitled to "no more than payment into it of the relevant portion of the down payment for the Florida residence not attributable to Joan Kai-

ser" plus the payments made to reduce the principal on the mortgage. Appellants' Brief, at 38. If a debtor transfers property with the intent of hindering, delaying or defrauding his creditors, the property may be impressed with a constructive trust. *Banister v. Solomon,* 126 F.2d 740, 741 (2d Cir.1942); *Elliott v. Elliott,* 365 F.Supp. 450, 452–455 (D.C.S.D.N.Y.1973); *In re Rodriguez,* 24 B.R. 12 (Bkrtcy.S.D.Fla.1982).

Here the Kaisers adduced no evidence to show that any payment on account of the Florida premises was chargeable to any entity other than the debtor, and hence the bankruptcy court's finding that the debtor's wife had no equity in the property was proper (Findings ¶¶ 39–45). The record showed that the mortgage, maintenance and improvement payments were made from business entities under Mr. Kaiser's control or accounts solely funded by him, and, as such, payments with respect to the Florida property were attributable to him (Findings ¶¶ 58–60).

■ The bankruptcy court properly denied the debtor's discharge pursuant to § 727(a)(2)(A) and (a)(4)(A). While the value of the property transferred within the one year period may tend to negate fraudulent intent, where, as in this case, the record reveals a continuing concealment of property on the part of the debtor, courts look beyond the twelve month limitation in finding actual intent to defraud. *In re May,* 12 B.R. 618, 627–28 (D.C.N.D.Fla. 1980).

Bankruptcy Code section 727(a)(4)(A) authorizes a denial of the debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath ...." Mr. Kaiser certified on several occasions that New York was his domicile. Subsequently, he asserted this declaration of domicile to have been a mistake and he affirmed under oath that he was a Florida domiciliary (Findings ¶¶ 138–143). The statements concerning domicile, the addition of post-petition creditors, and the omission of creditor Sol Walker, the assignee of the promissory note underlying the mortgage on the Florida premises, cer-

tainly justified the bankruptcy court's finding that Mr. Kaiser had knowingly and fraudulently made a false oath. Mr. Kaiser's discharge was properly denied. *In re Diodati*, 9 B.R. 804 (Bkrtcy.D.Mass.1981); *In re Diorio*, 407 F.2d 1330 (2d Cir.1969); (Conclusions of Law ¶¶ G, H).

The court finds the appellants' contentions that Bankruptcy Judges Lewittes and Lifland did not conduct the proceedings in an evenhanded and impartial manner to be without merit.

In accordance with the above, the judgment signed by Bankruptcy Judge Lifland on January 17, 1983 and entered on February 22, 1983 is affirmed in all respects. No stay of execution on the judgment will issue.

SO ORDERED.