·In re QUACKENBUSH.

(District Court, N. D. New York.` June 13, 1900.)

No.. 101.

1. BANKRUPTCY—OPPOSITION TO DISCHARGE—CONCEALMENT OF ASSETS.

Where a debtor makes a voluntary transfer of his property, without consideration, to his wife, for the purpose of defrauding his creditors and placing the· property beyond their reach, but continues always in the full use and enjoyment of the property, and the receipt of its rents and profits, and does not disclose the true facts regarding such property in his schedule in bankruptcy, or surrender it to his trustee, he is guilty of having "concealed, while a bankrupt, from his trustee, property belonging to his estate in bankruptcy," within the meaning of Bankr. Act 1898, § 29b, so as to forfeit his right to a discharge, although the fraudulent transfer was made long before the passage of the bankruptcy act; for the concealment is continuous, and extends beyond the date of the adjudication in bankruptcy.

2. SAME.

The bankrupt is none the less guilty of "concealing" such property because the facts and circumstances relating to the fraudulent transfer were, upon the bankrupt's examination, made known to the trustee or the creditors, the essence of the offense being the placing of the property in such a situation that the trustee cannot reach it, with the intent, on the part of the bankrupt, not only to keep it from the creditors, but to enjoy it himself; nor is it material that the concealment proves unsuccessful, or that the trustee may recover the property for the benefit of the estate.

In Bankruptcy. On exceptions and on motion to confirm the report of the referee recommending that a discharge be denied the bankrupt because of his having concealed from the trustee his interest in certain real and personal property.

The referee recommended the denial of a discharge on the ground that the eleventh specification was well pleaded and its averments sustained by the proof. As originally filed specifications numbered 7 and 9 were defective. These defects have now been cured by amendment. In legal effect the report of the referee sustains also these specifications as amended. The questions debated, therefore, arise upon specifications numbered 7, 9, and 11. Specification 7, as amended, alleges, in substance, that the bankrupt knowingly and fraudulently concealed and still conceals from his trustee property known as the "Opera-House Property," situated in Pittsfield, Mass. It alleges that this fraud and concealment was consummated in the following manner: In the summer of 1881 the bankrupt, being largely indebted, for the purpose of defrauding his creditors, caused certain fraudulent and fictitious actions to be brought in which he permitted judgments to be taken by default and the said opera-house property to be sold to his brother-in-law for the nominal sum of $500, which sum was advanced by the bankrupt. That after the sale the bankrupt continued to deal with said property as his own and received the rents thereof until the year 1895, when, at the request of the bankrupt. the property was, without consideration, conveyed to his second wife, he continuing as before to treat the property as his own, receiving the rents and profits thereof and concealing the same from his trustee. That the bankrupt knowingly and fraudulently omitted this property from his schedules pretending to receive the rents and profits as agent of his wife. That the property is worth the sum of $100,000 over and above all liens and incumbrances. Specification 9, as amended, alleges, in substance, that the bankrupt knowingly; fraudulently and continuously concealed from his trustee and now conceals his estate and interest in the American House property, at Pittsfield, Mass. That this property was transferred to the bankrupt's first wife by the foreclosure of a fictitious mortgage in April, 1891, which foreclosure was deceitfully and collusively accomplished to enable the bankrupt to cheat his creditors. That

thereafter, by a series of fraudulent devices, the property was conveyed to the bankrupt's second wife in March, 1895; that after this conveyance the bankrupt continued to exercise acts of ownership over said property and to collect the rents and appropriate the same to his own use. That said property is worth to exceed $100,000 and that the bankrupt concealed and continues to conceal the same from his trustee. Specification 11 alleges that the bankrupt has concealed his interest amounting to over $5,000, in his deceased wife's personal estate, to one-third of which he became entitled upon her death, intestate, in September, 1891. That he conveyed the same in October, 1891, without consideration, to one Waterman, and by falsely and fraudulently claiming ever since that such transfer was a bona fide and honest transaction he has concealed his ownership in said fund, which belongs to his estate, from his trustee in bankruptcy.

The referee has presented a carefully prepared and voluminous report in which the salient features of the evidence are considered and, substantially, all of the authorities bearing on the questions involved are cited. The referee concludes his report as follows: "After most careful consideration, and most reluctantly, I am satisfied beyond doubt that the bankrupt has been guilty, in law as well as in fact, of such a concealment of property as is condemned by section 29. Bankr. Act. It is objected and urged that the cases cited by the counsel for the creditors deal with secret trusts, while none is here established. Whether there be a secret trust or merely a colorable transfer the result seems to me to be the same. The bankrupt has in fact a valuable interest in the undistributed personalty of his deceased wife which, had he been so disposed, he could have turned over or disclosed to his trustee, and which he has knowingly and fraudulently concealed, while a bankrupt, from his trustee. I cannot believe the bankruptcy act was ever intended to free from his debts any man whose affairs and surroundings are such as appear in this case. I may be wrong, but my convictions are clear. In my judgment a discharge should be refused."

Charles E. Patterson, for bankrupt.

John L. Cadwalader, John Lindley, David Levy, and George Coggill, for opposing creditors.

COXE, District Judge (after stating the facts as above). The careful examination bestowed upon this case by the referee, evidenced by an elaborate and painstaking report upon all the issues of law and fact, renders it unnecessary at this time to do more than indicate the conclusion of the court upon the fundamental question of law involved. Broadly stated the referee has found that the proceedings by which, years prior to the present law, the bankrupt's property, real and personal, was transferred to his confidential adviser and to his wife, were instituted for the purpose of defrauding his creditors and putting his property beyond their reach. The referee finds that the transfers, though cunningly and ingeniously devised, were in fact without consideration and were null and void as to creditors. He finds further that though the legal title is in the wife the property is actually owned and controlled by the bankrupt himself, he having exercised the same dominion over it since the transfers as before. The conclusion follows that, upon his qualification, the property vested in the trustee by virtue of section 70, par. a, subd. 4, of the act, or that it belonged to the bankrupt under a secret trust for his benefit. The principal facts found by the referee are unquestioned and it is enough to say that his findings are supported by the evidence. There is no reason why they should not be accepted by the court.

The pivotal question of law arising upon these facts may be stated

briefly and broadly as follows: Can a discharge be refused upon the ground that the bankrupt has concealed his property from his trustee where he transferred it in fraud of creditors years prior to the act, but in such circumstances that he continues to control it and enjoy the benefits of it himself? The law, so far as applicable to this condition, provides that the judge, after duly investigating the merits, shall discharge the bankrupt unless he has committed an offense punishable by imprisonment as provided in section 29b of the act, namely,—knowingly and fraudulently concealed, while a bankrupt, from his trustee property belonging to his estate in bankruptcy. In order to warrant the refusal of a discharge under this section it is necessary that the creditors shall establish the following propositions beyond a reasonable doubt: First. That the bankrupt has concealed property from his trustee in bankruptcy. Second. That the property so concealed belongs to the bankrupt's estate. Third. That the concealment occurred while he was a bankrupt or after his discharge. Fourth. That the concealment was made knowingly and fraudulently. In other words, it is necessary to show that Quackenbush since he has been adjudicated a bankrupt has knowingly and fraudulently concealed from his trustee property which belongs to his estate and should be divided by the trustee among his creditors. If the fraudulent transfers complained of, occurring as they did long prior to the act of 1898, had culminated at the time they were made so that the bankrupt's interest in the property passed forever beyond his control and became vested legally and beneficially in the transferees, there can be no doubt that he would be entitled to his discharge no matter how preferential and fraudulent the transfers may have been as to creditors at the time. A fraud committed prior to the law making it a crime cannot bar a discharge. In re Webb (D. C.) 98 Fed. 404. In 1891 the bankrupt could have transferred his entire property to a single creditor to the exclusion of all the rest and the transaction, had it ended there, would not have affected his right to a discharge in the remotest degree. If, however, the creditor holds the property in trust for the bankrupt a very different proposition is presented. The difficulty with the bankrupt's contention is that the transaction did not end in 1891. By virtue of transfers made prior to July 1, 1898, the bankrupt is still enjoying property which equitably belongs to his creditors. The referee, after seeing and hearing the witnesses, has found that the transfer of the personal estate, which vested absolutely in the bankrupt upon the death of his first wife, was merely a juggle by which the legal title was temporarily vested in another to prevent the property from being reached by creditors. In short, this property was the property of the bankrupt. It is used and enjoyed by him as fully as if the legal title were in his name. The referee is of the opinion that the bankrupt acquired over it absolute ownership and control, that his attempts to hide it have proved abortive and that at any moment he can transfer it to the trustee if he desires so to do.

It is argued that there is no concealment because the facts regarding transfers to Waterman and to the bankrupt's present wife were made known to the creditors. It is thought that this is too technical

a view to take of the statute. Although the present act is more liberal than former acts in permitting discharges it cannot be doubted that the purpose of the lawmakers was to grant this privilege only to the honest bankrupt who surrenders all that he possesses to his creditors and not to one who by a process of legal necromancy is living in luxury upon an estate which equitably belongs to them. It would be an exceedingly narrow construction to hold that the bankrupt avoids the charge of concealment because he informs the trustee of the plan adopted to effectuate the fraud. This information in no way aids the trustee so long as the property is beyond his reach. Should a party in contemplation of bankruptcy convert his assets into gold and place it in the hands of a trusted agent who immediately embarks for some Patagonian port, it is thought that the bankrupt could hardly escape the charge of fraudulent concealment by giving a detailed account of the steps taken to get the property beyond the jurisdiction of the court. He might recite in his schedules the amount and value of the property abstracted and the name of the ship, of the agent and of the destined port; but all this would not condone an act which every honest man must regard with abhorrence. Again, a bankrupt conveys all his property to his wife for his own benefit and without consideration and the next day files his petition and schedules in which the deed of transfer is fully described. Can it be maintained that the accusation of concealment is met by such a disclosure? In each instance the property is gone, the creditors have lost it, the trustee cannot reach it, the bankrupt alone can call it back. The character of the fraud is not altered because it is admitted by the perpetrators. Disclosure of the fraud is not inconsistent with concealment of the property. The essence of the offense is the concealment of the property with intent to keep it from the creditors; the time when the scheme was concocted, which makes the concealment possible, is not material. Neither does it avail the bankrupt that the concealment has proved unavailing; the trustee may recover the entire amount and still the discharge must be withheld. The offense is consummated if the bankrupt with fraudulent intent conceals for a single day his property from the trustee. The law does not say that the fraud must be successful. One who attempts such dishonesty is deemed unworthy of a discharge and he is none the less unworthy because the attempt is or may be frustrated.

Leaving the real estate out of consideration, if the referee's facts and conclusions be correct, the bankrupt to-day has in his possession and under his control at least $5,000 which belongs to the trustee. This property was transferred to the bankrupt's confidential friend by a mere legal shuffle for the purpose of keeping it from his creditors. The transferee parted with no consideration and understood the transaction as undertaken for the benefit of the bankrupt and to baffle his creditors. The court inclines to the opinion that the referee's findings of fact and conclusions of law are correct. It is this feature of continuous concealment, extending beyond the date of bankruptcy, which distinguishes this case from most of the cases cited under the present act. The question is a novel one, so far as the law of 1898 is concerned, and the argument has been presented with great learning and ability on both sides. The decisions arising under the

act of 1867 deal with language so nearly similar that they are entitled to great weight as interpreting the present law. Every important proposition now discussed is carefully considered in the Hussman· Case, 2 N. B. R. 437, Fed. Cas. No. 6,951. This case cannot be successfully distinguished, on principle, and the reasoning of the able opinion of the district judge fully sustains the determination reached in the case at bar.

The court cannot resist the conclusion that some part, at least, of the property in question belongs equitably to the trustee. The bankrupt, if not the actual owner, is the beneficial owner thereof and by reaffirming the fraudulent transfers, though made prior to the act, as a cloak to hide and cloud the title, is guilty of the concealment contemplated by the law. It is true that he has admitted some facts, but he has neither restored the property nor confessed the fraud. The result is that he is to-day enjoying property which should be divided among his creditors. It cannot be that congress intended to sanction and reward such conduct. It is not the intention of the law to release a dishonest debtor. Unless a bankrupt deals fairly with his creditors he cannot expect the court to give him a receipt in full of their debts. Discharge refused.

### On Petition for Rehearing.

(July 10, 1900.)

The court has examined with care the arguments advanced in the petition and is clearly of the opinion that a case for a rehearing has not been made out. No new fact is presented, no new proposition of law is argued. Indeed, it is hardly possible to assume, in view of the elaborate oral argument, the exhaustive briefs and the unquestioned ability of counsel, that anything was omitted which could strengthen the bankrupt's position. The court did not discuss every proposition argued, but it considered them all. It was thought unnecessary, after reaching the general conclusion that concealment was shown, to enter into an analysis of all the subsidiary questions debated in the briefs. To have done so would have extended the opinion beyond reasonable length and was particularly unnecessary in this case because of full report of the referee. The court intended to make clear the central proposition that the record disclosed a case of concealment which compelled a refusal of the discharge.

It was shown that the bankrupt is enjoying property which equitably belongs to his creditors and would to-day be in the hands of his trustee if he performed his obvious duty regarding it. It can hardly be imagined that the nominal title in his wife would offer any obstacle if the bankrupt honestly desired that the property should be divided among his creditors, but even should she prove recalcitrant a disclosure of the whole truth by the bankrupt would compel a recovery by the trustee. In short, to state the case bluntly, the bankrupt's property is now in his possession or under his control. This property belongs to his creditors and would be in the hands of his trustee but for his fraud which fraud is persisted in and used as a cloak to cover the property and keep it in his possession. This conduct upon his part amounts to concealment and prevents a discharge.

The motion for rehearing is denied.