**In re Vern Ray PENNER, Debtor.**

**Eudora L. PENNER, Plaintiff,**

v.

**Vern Ray PENNER, Defendant.**

**Bankruptcy No. 87–30645.**
**Adv. No. 87–3163.**

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

May 31, 1989.

Michael DeBonie, Goshen, Ind., for plaintiff.

Charles Cogdell, Fort Wayne, Ind., for defendant.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court on the Plaintiff's complaint objecting to discharge. Trial on the complaint began on June 2, 1988, with the presentation of evidence concluded on July 15, 1988. Following the submission of evidence, arguments and briefs of counsel, this matter was taken under advisement.

On July 31, 1984, the Defendant, Vern Ray Penner, and his current wife, Sharon J. Penner, took title, as tenants by the entireties, to approximately two-hundred acres of real property in Wabash County,

Indiana. By this time, they had already been in possession of the property for approximately one year. Financing for the purchase was obtained from Farmers Home Administration (FmHA) which, on August 2, 1984, loaned the Penners $200,-000.00. In return, both the Defendant and his wife signed a promissory note and executed a mortgage to secure the note. On October 31, 1985, this note was reamortized and once again both the Defendant and his wife signed this document.

Located on this property is a working dairy known as "Elko Dairy." The initial herd was purchased with funds borrowed from FmHA, for which both the Defendant and his wife signed a promissory note as borrowers. To secure the note FmHA took a security interest in the cows as well as certain farm equipment.

The Defendant, by trade, is a farmer. He is responsible for the operations of the dairy. Prior to her marriage to Defendant, Sharon Penner was a school teacher. Until this marriage her only farming experience came from living on her parents' farm as a child. She has never managed or operated a dairy farm.

The Defendant and Sharon Penner filed joint tax returns in 1983 and 1984. These returns show his occupation as a farmer and hers as a house wife. They also indicate that he operated the business as a sole proprietor. In July of 1985, amended returns were filed for the tax years of 1983 and 1984. On these amended returns, Sharon Penner has become the proprietor of the business, while the Defendant has become her employee.

After the amended returns were filed, the Defendant continued to manage the dairy operation and have full use and enjoyment of the assets of Elko Dairy. All the income from the dairy operation is placed in a separate Elko Dairy bank account. These funds are used to pay all the dairy expenses, as well as personal expenses of the Defendant and his wife.

It is clear from the facts that the Defendant at one time had an interest in the dairy. The amendment of the original tax returns was merely a part of Defendant's attempts to divest himself of this interest. The transfer, however, was nothing more than a paper transaction, in which Sharon Penner became the ostensible owner of the property but the Defendant, nonetheless, continued to use, enjoy and operate the dairy as if it were still his own.

Plaintiff contends that Defendant's discharge should be denied pursuant to § 727(a)(4) and (a)(2). According to the Plaintiff, the Defendant has a present ownership interest in the Elko Dairy, as a partner with his wife, and this information was knowingly and fraudulently omitted from his schedules and statement of affairs. Thus, the Plaintiff contends, Defendant has made a false oath for which his discharge should be denied under § 727(a)(4). The Plaintiff also contends that this failure to disclose constitutes a concealment of this property interest, which was done with the intent to hinder, delay, and defraud debtor's creditors. Consequently, the discharge should also be denied under § 727(a)(2).

Defendant contends the dairy belongs entirely to his wife and that he does not have an ownership interest in it. Thus, he has neither made a false oath, nor concealed an interest in this property.

What has been alleged and maintained throughout the trial is that the Defendant concealed a present ownership interest in the dairy. The facts adduced at trial, however, indicate there is no such interest, as it had been disposed of through what may have been a fraudulent transfer. At the close of the trial, we asked the parties to address in their briefs the possibility that a fraudulent conveyance had taken place in 1985, and, if so, whether the discharge should be denied on this basis, notwithstanding the fact that the transfer occurred well outside the one year period proceeding the filing. *See* 11 U.S.C. § 727(a)(2). Neither party directly addressed this issue in their briefs and a fraudulent conveyance was not alleged in the complaint or pre-trial order.

■ Rule 54(c) of the Federal Rules of Civil Procedure, which applies in adversary

proceedings though Bankruptcy Rule 7054, provides in pertinent part that:

> Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.

This Rule "has been liberally construed, leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved." *Kaszuk v. Bakery and Confectionery Union*, 791 F.2d 548, 559 (7th Cir.1986) (citations omitted). This duty to grant appropriate relief is, however, limited when doing so would prejudice the opposing party. *Id.*

In this case, there is not sufficient prejudice to the Defendant to compel the court to ignore its duty. At the end of the trial, both parties were fully advised that the court was concerned about the possibility that a fraudulent conveyance had taken place. The Defendant has not been exposed to any additional liability. His discharge still remains in jeopardy under § 727(a)(2), only under a slightly different theory. Furthermore, the facts which support this theory are intimately intertwined with the issues actually tried.

The matter was tried on the theory that the Defendant had a present ownership interest in property which was concealed from the Trustee, by not disclosing it in the bankruptcy schedules. As proved at trial, the Defendant had no such interest in the property on the date of the petition. This lack of any interest was not the result of Defendant's never having had an interest in the property. It was, instead, the result of Defendant having divested himself of his interest through a potentially fraudulent conveyance. We will, therefore, proceed to determine whether, in fact, a fraudulent conveyance has occurred and whether § 727(a)(2) bars discharge on that ground.

This result is particularly appropriate in light of the imprecise boundary between concealment and transfer as condemned by section 727(a)(2). In part, this imprecision arises out of the one year limitation of section 727(a)(2)(A). Despite this seemingly absolute limitation on the timing of debtor's conduct, existing case law recognizes that a transfer of property, which occurred more than one year prior to the petition, may warrant the denial of a discharge if the transfer is concealed or beneficial interests are retained into the magic one year period. *In re Quackenbush*, 102 F. 282 (N.D.N.Y.1900); *Matter of Vecchione*, 407 F.Supp. 609 (E.D.N.Y.1976); *In re Howard*, 55 B.R. 580 (Bankr.E.D.N.C.1985). In such situations, it becomes difficult to determine whether the court has condemned the transfer, the concealment or both.

More fundamental, however, is that, while separately condemned, it is often difficult to draw a distinction between a transfer and a concealment of assets. The conduct in question may have attributes of both. To an extent, this is because the debtor's motivation for his actions—to keep property from his creditors so that he may enjoy it himself—must be the same, if the discharge is to be denied.

There can be no doubt that a debtor who consciously hides property which he owns, in an effort to deprive his creditors of it, is guilty of a concealment which requires a denial of the discharge. *See In re James*, 175 F. 894 (E.D.N.C.1910). But what of the debtor who attempts something slightly more sophisticated? Rather than hiding property in a secret place, he puts title in a third person, still with the intention of keeping it from his creditors. Further, what of the debtor who places title to his property in a third person and, yet, retains its benefits or control over its use? Is this a fraudulent transfer or is it concealed property? *See In re Quackenbush, supra*, 102 F. 282. Are these not just slightly different ways of hiding property, the only difference being the place it is hidden? It, thus, appears that the concealment and the transfer condemned by section 727(a)(2) represent overlapping sets in which the same acts may, potentially, be characterized as either or both types of prohibited conduct. *See Matter of Vecchione, supra*, 407 F.Supp. at 614–19; *In re Baxter*, 27 F.Supp. 54, 56 (S.D.N.Y.1939).

Concealing property under circumstances sufficient to warrant denial of the discharge is, thus, somewhat broader than simply hiding assets in a secret place or failing to disclose them. It can also be found in "a transfer of title coupled with the retention of the benefits of ownership." *In re Olivier*, 819 F.2d 550, 553 (5th Cir. 1987). *See also Matter of Kauffman*, 675 F.2d 127, 128 (7th Cir.1981) (transfer with the bankrupt continuing to use the property as his own). Consequently, concealment, as condemned by section 727(a)(2) involves more than just the hiding of assets which would be traditionally associated with the term. It also extends to include a species of fraudulent transfer in which the debtor apparently divests himself of ownership, while continuing to retain the benefits or use of the property transferred. Defendant's conduct falls within the area where concealment and transfer overlap. It can properly be characterized as one, the other, or both.

■ In pertinent part, 11 U.S.C. § 727 states as follows:

Section 727. Discharge.

(a) the court shall grant the debtor a discharge, unless—

    \*    \*    \*    \*    \*    \*

(2) the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition.

    \*    \*    \*    \*    \*    \*

In order to effectuate the fresh start purpose of the Code, this section must be construed strictly against creditors and liberally in favor of debtors. *In re Ellingson*, 63 B.R. 271, 276 (Bankr.N.D.Iowa 1986). In addition, a debtor is entitled to an initial presumption that most people are honest and do not normally engage in fraudulent activities. *See generally In re Riso*, 74 B.R. 750 (Bankr.D.N.H.1987). It is equally clear, however, that § 727(a)(2) does not require a plaintiff to offer proof that a given debtor possessed an intent to defraud all of his creditors. Instead, a showing that a debtor intended to defraud one creditor is enough to deny discharge under the statute. *In re Adeeb*, 787 F.2d 1339, 1943 (9th Cir.1986). Furthermore, whether the debtor's transfer of property actually injured his creditors is irrelevant to the denial of discharge. *Id. See also Matter of Smiley*, 864 F.2d 562, 569 (7th Cir.1989).

Bankruptcy Rule 4005 places the burden of proving objections to discharge upon the Plaintiff. It must do so by clear and convincing evidence. *In re Ford*, 53 B.R. 444, 449 (Bankr.W.D.Va.1984). Once an initial showing has been made, by producing evidence sufficient to establish the objection, the burden shifts to the Defendant to demonstrate whether the transfer was justified. *Id. See also In re Johnson*, 68 B.R. 193, 198 (Bankr.D.Or.1986). The ultimate burden of persuasion, however, always remains with the Plaintiff. *In re Morris*, 51 B.R. 462, 466 (Bankr.E.D.Tenn.1985); *In re Brooks*, 58 B.R. 462, 464 (Bankr.W.D.Pa. 1986).

To prevail under the theory that a fraudulent transfer has taken place, the Plaintiff must prove the existence of each of the following elements:

(1) That a transfer of property has occurred;

(2) That this property was owned by the debtor;

(3) That the transfer occurred within one year before the date the bankruptcy petition was filed, and;

(4) That the defendant had, at the time of the transfer, the intent to defraud a creditor. *In re Ford, supra*, 53 B.R. at 446 (quoting *In re Reed*, 18 B.R. 462, 463 (Bankr.E.D.Tenn.1982)).

■ We find that elements (1) and (2) are present in this case. As of 1985, when the defendant amended his tax returns, he had some type of ownership interest in the Elko Dairy, if not as a sole proprietor, at least as part-owner with his wife. This is indicated by the fact that the Defendant not only co-signed for the loan to purchase the dairy

with his wife but also, before he amended his tax schedules, he claimed to be the sole proprietor of the dairy. The property was transferred as of the date the Defendant amended his returns. It is on that date, we feel, the Defendant disavowed any ownership in the dairy, transferring all interest in it to his wife.

The date of the transfer causes some concern. It is not within one year of April 16, 1987, the date the bankruptcy petition was filed. This is the reason the court asked both sides to brief whether the concealment of a fraudulent conveyance, which takes place more than one year prior to the petition, could justify denial of the discharge.

As previously stated, existing case law recognizes that a transfer of property which occurred more than one year prior to the petition may warrant the denial of a discharge, if the transfer is concealed or beneficial interests are retained into the magic one year period. *In re Quackenbush, supra,* 102 F. 282; *Matter of Vecchione, supra,* 407 F.Supp. 609; *In re Howard, supra,* 55 B.R. 580. These courts have used what has come to be known as the continued concealment doctrine to deny discharge under § 727(a)(2), even when the fraudulent transfer occurred outside the year period. In essence,

> [c]ontinuing concealment sufficient to bring transfers within the one year statutory period of 11 U.S.C. § 727(a)(2)(A) may be found when the debtor transfers legal title to property outside the one year period, but retains a beneficial or equitable interest in the property into the one year period.... If the debtor continues to use, enjoy, and control the property transferred as if the property remained his own, then he retains a beneficial interest in the property. *In re Howard, supra,* 55 B.R. at 584 (citations omitted).

Defendant clearly retained a sufficient beneficial interest in the dairy to constitute continued concealment. Not only did the Defendant work on and manage the farm in the same manner as he did before the transfer of ownership occurred, he was paid a small (almost meaningless) sum of money for his efforts. This, in and of itself, may not constitute sufficient ties for continued concealment. Income from the dairy, however, was used not only to pay the dairy expenses but also to pay personal expenses of both the Defendant and his wife. This, we feel, demonstrates that the Defendant was more than just an employee of the business. It is clear to this court that the evidence presented at trial indicates that the Defendant continues to have the full use and enjoyment of all the assets and fruits of Elko Dairy. Therefore, the evidence shows that the Defendant retained a beneficial interest in the property into the statutory period.

■ The final element is whether the Defendant made this transfer with the intent to defraud his creditors. In order to deny discharge, we "must find proof of the debtor's actual intent to defraud, ... but that finding may be inferred from circumstances of the debtor's conduct." *Matter of Smiley, supra,* 864 F.2d at 566 (citations omitted). *See also In re Kauffman, supra,* 675 F.2d at 128 (citing *Matter of Vecchione, supra,* 407 F.Supp. at 615, which states that intent "must be gleaned from inferences drawn from a course of conduct.").

The actual intent to hinder, delay, or defraud any entity to which the debtor was indebted will rarely be proved by direct evidence. There are, however, certain factors which, if found to be present, are strong indicia that actual fraudulent intent exists. These factors are often termed "badges of fraud." *In re May,* 12 B.R. 618 (D.N.D.Fla.1980). The following represent some of the most commonly occurring badges of fraud:

(1) The lack or inadequacy of consideration for the property transferred;

(2) The existence of a family, friendship, or other close relationship between the transferror and the transferee;

(3) The transferror's retention of the possession, control, benefits, or use of the property in question;

(4) The financial condition of the transferror both before and after the

transfer took place (i.e., whether the transfer resulted in insolvency);

(5) The cumulative effect of these transaction and course of conduct after the onset of financial difficulties or dependency or threat of suit by creditors; and

(6) The general chronology and timing of the transfer in question. *See In re May, supra,* 12 B.R. at 627; *In re Clausen,* 44 B.R. 41, 44 (Bankr.D. Minn.1984); *In re Schmit,* 71 B.R. 587, 590 (Bankr.D.Minn.1987).

The existence of just one of these badges has been held to warrant a finding of actual fraudulent intent. *See e.g., In re Butler,* 38 B.R. 884, 888 (Bankr.D.Kan.1984). The accumulation of several factors, however, can lead inescapably to the conclusion that the debtor possessed the requisite intent. *Matter of Titus,* 75 B.R. 256, 259–60 (Bankr.W.D.Mo.1985). *See also In re Jacobs,* 60 B.R. 811, 814–16 (D.M.D.Pa.1985).

It is clear to this court that numerous badges of fraud are present here. We conclude, therefore, that the appearance of so many indicia demonstrates the Defendant's actual fraudulent intent.

The Defendant transferred the property in question to a close member of his family; namely, his wife. The transfer lacked any consideration in that the Defendant merely constructed a paper trail to indicate his wife's ownership. The Defendant also maintained control of the business and received the benefits from it. The method, timing, and circumstances surrounding the transfer further reveal that it was infected with a fraudulent purpose.

The Plaintiff and the Defendant were divorced in 1980. Pursuant to the terms of the court approved property settlement agreement, the Defendant had substantial financial obligations to the Plaintiff which had to be fully paid in October of 1985. By early spring of that year, it was obvious that the Defendant would not be able to meet these obligations. Knowing this and realizing that his former wife would initiate formal proceedings to collect the amounts due her, the Defendant proceeded to "put his house in order." Doing so meant attempting to make himself uncollectible, by restructuring his affairs so that he had neither income nor assets.

It was easy enough to claim that the dairy and its assets belonged to his current wife and that he had no interest in it. It consisted entirely of personal property, most of which had been purchased in the business name. The real estate on which it was located was owned as tenants by the entireties. The Defendant did, however, have to correct the paper trail left by the previous joint tax returns, which contained the acknowledgement that he operated the dairy as a sole proprietor. This was done by filing amended tax returns, in the summer of 1985, showing the current Mrs. Penner to be the proprietor while the Defendant became her employee. Other trappings of an employer-employee relationship, such as issuing W–2 statements, began at this time. The Penners also began efforts to specifically identify the business as Mrs. Penner's, in the spring of 1985. Business accounts and invoices began to be identified not just in the vague business name, but as either Elko Dairy–Sharon Penner, or simply Sharon Penner. Sharon Penner also began to sign documents identifying her as president of the dairy, while the Defendant assumed the title of manager.

The ultimate effect of all this activity was to make it appear that the Defendant had no interest in the dairy, its income, or assets, except as a simple employee of his wife. If the new arrangement could be successfully maintained, the former Mrs. Penner would be unable to collect any part of the substantial sums that would soon be due her.

All the elements of a fraudulent transfer are present and denial of discharge on that ground is appropriate.

It is also apparent that Defendant's actions constitute "concealment" as that term is used in § 727(a)(2). "Concealing property for the purposes of section 727(a)(2)(A) can be accomplished by a transfer of title coupled with the retention of the benefits of ownership." *In re Olivier, supra,* 819

F.2d at 553. *See also Matter of Kauff-man, supra,* 675 F.2d at 128.

As in the case of a fraudulent transfer, § 727(a)(2)(A) addresses only concealment of property occurring within a year before the filing of the petition. The Plaintiff argues in her brief that, although § 727(a)(2)(A) contains the one year limitation, it is settled law that if the objectionable act occurred more than one year before the bankruptcy, it may still provide a basis for objection to discharge if it operates as a continuing concealment. The Defendant contends that he did not conceal this transaction, because, not only did he amend his returns indicating his wife's ownership but that the Plaintiff was put on actual notice that his wife was, in fact, the owner. Thus, according to the Defendant, such public disclosure is inconsistent with a theory of concealment.

The Seventh Circuit Court of Appeals has addressed this point;

> A concealment ... need not be literally concealed. The transfer of title with attendant circumstances indicating that the bankrupt continues to use the property as his own is sufficient to constitute a concealment. *Matter of Kauffman, supra,* 675 F.2d at 128.

Other courts have used the language of *Kauffman* to draw the same conclusion. *See In re Olivier, supra,* 819 F.2d at 554–55; *In re Hodge,* 92 B.R. 919, 922–23 (Bankr.D.Kan.1988). Thus, it is not the secrecy of the transfer but, instead, the retained beneficial interest that may constitute concealment. Where this beneficial interest is retained into the year prior to the petition, concealment has occurred.

It is clear that Defendant's transfer of the property and his continued retention of its use, control and benefits, into the year prior to bankruptcy, constitutes concealment of an asset with the "intent to hinder, delay, or defraud a creditor" for the purposes of § 727(a)(2)(A). *See In re Olivier, supra,* 819 F.2d at 554–55; *Matter of Kauffman, supra,* 675 F.2d at 128; *In re Hodge, supra,* 92 B.R. at 922–23.

It is our conclusion that all of the factors in § 727(a)(2) have been fulfilled. Not only do the Defendant's actions constitute a fraudulent transfer but they also constitute concealment. For all of these reasons, denial of discharge is appropriate.

Judgment will be entered accordingly.