**In re Galen DeBRUIN and Mary DeBruin, Debtors.**

**KELLOGG–CITIZENS NATIONAL BANK OF GREEN BAY, Plaintiff,**

**v.**

**Galen DeBruin and Mary DeBruin, Defendants.**

**Bankruptcy No. 90–03324–JES.
Adv. No. 90–0297.**

United States Bankruptcy Court, E.D. Wisconsin.

May 1, 1992.

Jeffrey F. Jaekels, Soquet, Wanezek, Umentum & Jaekels, S.C. Green Bay, Wis., for plaintiff.

Galen and Mary DeBruin, pro se.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

Like many other dairy farmers, Galen and Mary DeBruin of Luxemburg, Wisconsin, have become victims of a declining farm economy. Their adverse circumstances were further heightened by a severe drought in 1987 and 1988 and bovine tuberculosis in their cattle. These misfortunes caused the DeBruins to default on their loans to Kellogg–Citizens National Bank of Green Bay f/k/a Associated De Pere Bank ("Bank"). The Bank's collateral consisted of the debtors' real estate, cattle and machinery. As a result of the default, in March of 1988, the Bank accelerated payment of the entire loan balance, which then totalled approximately $230,800. The present balance due is approximately $300,000.

All efforts by the parties to achieve a settlement failed. The DeBruins thereafter pursued an unconventional route in their attempt to prevent the Bank from liquidating its collateral. In April of 1988, approximately one month after the notes were accelerated, the DeBruins, without legal counsel but with the help of a layperson, Sanford G. Knapp, created five separate trusts. The trusts designated Knapp and Galen DeBruin and/or Mary DeBruin as trustees and the DeBruin children, Timothy (now 9 years old) and Donald (now 7 years old), as beneficiaries. A summary of these trusts follows:

1. *White Gold Trust.* Its corpus is comprised of 37 cows formerly owned by the DeBruins and transferred into the trust in May of 1988. The trust income consists of milk proceeds, which is used to pay for the DeBruins' living expenses. Some of these proceeds were also used to purchase the vehicles held by the Four Wheel Trust.

2. *Four Wheel Trust.* A 1982 Chevrolet Cavalier station wagon, a GMC pick-up and a Volkswagen Rabbit, form its corpus. All of these vehicles are driven by the DeBruins.

3. *11–H Trust.* Proceeds from sales of bull semen by Mr. DeBruin are paid into this trust. These proceeds were used (along with the milk proceeds in the White Gold Trust) to purchase the motor vehicles held in the Four Wheel Trust and are also used to buy gasoline and pay for the maintenance of these vehicles.

4. *Rainbow's End Trust.* This trust contains 15 acres of land adjacent to the DeBruin farm. The real estate was deeded in April of 1988 from Galen and Mary DeBruin to Galen's sister, Karen DeBruin, who thereafter immediately deeded it to the Rainbow's End Trust.

5. *Triple H Trust.* This trust has no assets.

On June 22, 1990, the DeBruins filed their joint petition in bankruptcy under chapter 7. Thereafter, this adversary proceeding was commenced on September 17, 1990 by the Bank, objecting to the De-Bruins' discharge.[1] This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

The timing of the creation of the trusts by the DeBruins, soon after notification from the Bank of its intent to liquidate its collateral, was no coincidence. Mr. De-Bruin's explanation that the trusts were formed because of the drought and "for estate planning purposes" is woefully unconvincing. When the trusts were formed, the relationship between the Bank and the DeBruins had deteriorated badly. Mr. De-Bruin testified that he did not inform the Bank about the creation of these trusts. He also testified that the trusts were prepared "in accordance with tax requirements," even though done without any expert advice.

The DeBruins' gratuitous transfer of their assets into these trusts presents a presumption of fraudulent intent which shifts to them the burden of demonstrating a lack of such fraudulent intent. *In re Sanders*, 128 B.R. 963, 969 (Bankr.W.D.La. 1991). That presumption was never overcome. Furthermore, the testimony by Bank officials has convinced this court that the DeBruins removed assets from their farm in order to conceal their location from the Bank. While Mr. DeBruin maintains that he never knew where the cattle had been taken after they were removed, his alleged lack of knowledge is really not critical. What is important is the extent of his involvement and his underlying motivation in this fraudulent scheme.

The Bank has filed alternative counts for denial of discharge under §§ 727(a)(3) and (4) and nondischargeability under §§ 523(a)(2)(A) and (B). However, its primary emphasis is focused upon § 727(a)(2), which provides in part:

The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition.

F.R.B.P. 4005 places the burden of proving objection to discharge upon the plaintiff. Under the United States Supreme Court holding of *Grogan v. Garner*, — U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the burden of proof for cases arising under § 523 was held to be the preponderance of evidence rather than the clear and convincing evidence standard. Since *Grogan v. Garner*, several courts have extended the preponderance of evidence standard to cases arising under § 727(a)(2). *See In re Serafini*, 938 F.2d 1156, 1157 (10th Cir. 1991); *In re Cook*, 126 B.R. 261, 266 (Bankr.E.D.Tex.1991). In this case, regardless of which standard is applied, the result is the same because both standards of proof are amply satisfied by the Bank.

The prerequisite elements under § 727(a)(2)(A) are:

1. That the debtor transferred or concealed property;

2. That such property belonged to the debtor:

3. That the transfer or concealment occurred within one year of the filing of the petition; and

4. That the debtor transferred or concealed the property with the intent to hinder, delay or defraud the creditor.

*Matter of Agnew*, 818 F.2d 1284, 1287 (7th Cir.1987); *Matter of Brooks*, 58 B.R. 462, 465 (Bankr.W.D.Pa.1986).

The first and second elements are not in issue. The uncontroverted evidence estab-

---

**1.** At the outset of the trial on November 8, 1991 of this adversary, the DeBruins filed a motion converting this chapter 7 case to a case under chapter 13. Thereafter, the court, upon motion of Thomas J. King, chapter 13 trustee, and following a hearing, reconverted this case back to one under chapter 7 upon findings of lack of eligibility and lack of good faith.

lishes that 37 head of cattle together with some farm machinery owned by the De-Bruins were transferred by them into the White Gold Trust. The real dispute centers around the third and fourth elements:

1. Did the transfer by the DeBruins of their property occur within one year of the filing of the bankruptcy petition?
2. Was such transfer done with the intent to hinder, delay or defraud the Bank?

■ Mr. DeBruin claims that, because the transfer of the DeBruins' assets occurred in April and May of 1988—more than one year before he and his wife filed for bankruptcy—§ 727(a)(2) does not apply. However, many courts, including the Seventh Circuit, have adopted the continuing concealment doctrine. *Matter of Kauffman,* 675 F.2d 127, 128 (7th Cir.1981); *In re Penner,* 107 B.R. 171, 175 (Bankr. N.D.Ind.1989); *In re Cook,* 126 B.R. 261, 267 (Bankr.E.D.Tex.1991); *In re Bidlofsky,* 57 B.R. 883, 894 (Bankr.E.D.Mich.1985); *In re Olivier,* 819 F.2d 550, 555 (5th Cir.1987). The court in *In re Sanders,* 128 B.R. 963, 966 (Bankr.W.D.La.1991), observed:

> There is a common misconception that transfers or other transactions made by a debtor more than one year before the filing of a petition are immunized from review of the bankruptcy court. A major reason for this misconception is that 11 U.S.C. § 727(a)(2)(A) provides for denial of discharge where a debtor has transferred property within one year before the date of filing with intent to hinder, delay, or defraud a creditor or an officer of the estate. What is often overlooked is that this same provision also refers to concealments of property of the debtor. Concealments may be continuing ones. Under some circumstances, a transfer made years before the bankruptcy petition is filed may involve a concealment that continues into the one year period.

The transfer of the 37 cows together with other property was a concealment which continued into the 1–year period preceding the filing of the DeBruins' bankruptcy petition.

■ The final element—actual intent to hinder, delay or defraud—is rarely proven by direct evidence. *In re Penner,* 107 B.R. 171, 175 (Bankr.N.D.Ind.1989); *In re Maxted,* 107 B.R. 289, 291 (Bankr.D.Mont. 1988); *In re Otis & Edwards, P.C.,* 115 B.R. 900, 913 (Bankr.E.D.Mich.1990). It must be inferred from the debtor's course of conduct and is established through badges of fraud, including some or all of the following:

1. Lack or inadequacy of consideration for the property transferred;
2. Existence of a family relationship between the transferor and transferee;
3. Transferor's retention of possession, control, benefits or use of the property;
4. Financial condition of the transferor both before and after the transfer occurred;
5. Existence or cumulative effect of a pattern or series of transactions or course of conduct at the onset of financial difficulties, or pendency or threat of suits by creditors: and
6. General chronology and the timing of the transfers in question.

*In re Penner,* 107 B.R. 171, 175 (Bankr. N.D.Ind.1989): *In re McNamara,* 89 B.R. 648, 651 (Bankr.N.D.Ohio 1988).

■ Many of these badges of fraud exist in the case at bar. The DeBruins transferred property to trusts and designated their minor children as the sole beneficiaries. These transfers lacked consideration. Transfers to family members with little or no consideration can support a finding of fraudulent intent. *In re Essres,* 122 B.R. 422, 426 (Bankr.D.Colo.1990). The DeBruins served as trustees, maintained control over these trusts and continued to enjoy their use and benefit. The milk proceeds in the White Gold Trust paid the DeBruins' living expenses. The proceeds received from the sales of bull semen were transferred to the Four Wheel Trust and were used to purchase motor vehicles. The motor vehicles were operated by the De-Bruins. The proceeds from sales of bull semen were also used for payment of gas-

oline and vehicle maintenance. The timing of the formation of these trusts by the DeBruins on the heels of the Bank's acceleration of the loans and their continued treatment of the property as their own amply support the conclusion that the trusts were shams created in a vain attempt to conceal their property from the Bank.

■ Mr. DeBruin's responses in the course of the trial were blatantly evasive. On more than 70 occasions, he responded by saying: "I'm not sure," "I don't remember," or "I don't recall." This pattern of conduct convinces the court, after observing him, that he was not credible. Mr. DeBruin was clearly more involved in this scheme than was his wife, Mary DeBruin. Nevertheless, from the testimony presented, Mrs. DeBruin was not oblivious to what was happening. She fully cooperated with her husband and served as a trustee in the White Gold Trust, the Rainbow's End Trust and the Triple H Trust. The court fully recognizes that the purpose of bankruptcy is to provide honest debtors with a fresh start. But, a discharge is a privilege, not a right, and should inure only to the benefit of honest debtors. *In re Pimpinella*, 133 B.R. 694, 697 (Bankr.E.D.N.Y.1991). Moreover, as was pointed out in *In re Farouki*, 133 B.R. 769, 776 (Bankr.E.D.Va.1991):

> [A]cting as a check on the "fresh start" approach are provisions, barring a general discharge, which are designed "to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." (citing *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987))

Therefore, both of the DeBruins are denied a discharge pursuant to § 727(a)(2)(A).[2]

This decision shall constitute the court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

---

**2.** In view of this holding, the alternative counts alleged by the Bank under §§ 727(a)(3) and (4) and § 523(a)(2)(A) and (B) are rendered moot and need not be addressed.