**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: CARLOS M. SANDOVAL,
<u>Debtor.</u>

ZANDERMAN, INCORPORATED,
<u>Plaintiff-Appellee,</u>

v.                                                                          No. 96-2391

CARLOS M. SANDOVAL,
<u>Defendant-Appellant,</u>

and

UNITED STATES TRUSTEE,
<u>Party in Interest.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-96-1143-PJM, BK-95-11965-DK, AP-95-1269)

Argued: May 7, 1998

Decided: August 10, 1998

Before WILKINSON, Chief Judge, WILLIAMS, Circuit Judge, and
FRIEDMAN, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by per curiam unpublished opinion.

_____

**COUNSEL**

**ARGUED:** Carlos M. Sandoval, Waldorf, Maryland, for Appellant. Joseph Ermin Schuler, BARRETT & SCHULER, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

On April 5, 1995, Carlos Sandoval filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. First Union Bank of Virginia* claimed that Sandoval fraudulently transferred property in violation of 11 U.S.C. § 727, and therefore should not be entitled to a discharge. The bankruptcy court found, based on the facts before it, that Sandoval had engaged in a fraudulent transfer, and therefore, denied Sandoval's discharge. The district court affirmed the bankruptcy court. Likewise finding no error in the court's ruling, we affirm.

I.

Sandoval is a lawyer licensed to practice law in Virginia who was previously one of two shareholders in the Martinez and Sandoval law firm. The firm had a line of credit with First Union, which was guaranteed by Sandoval, and borrowed money. The firm defaulted on the loan around July or August 1994, and on September 22, 1994, its unsecured creditors filed an involuntary Chapter 7 petition in Bankruptcy Court. On October 7, 1994, First Union obtained a confessed judgment against Sandoval in Fairfax Circuit Court for $47,649.39.

_____

*Zanderman, Inc., the plaintiff-appellee in this action, is the successor in interest to First Union Bank of Virginia.

2

On October 27, 1994, the debtor filed a motion to set aside the judgment, and on October 28, 1994, First Union docketed the judgment in the Circuit Court for Prince George's County, Maryland.

In early November 1994, Sandoval transferred his individually held interests in his residence (located in Charles County, Md) and his automobile to himself and his wife as tenants by the entirety. The deed was recorded in Charles County, Maryland on December 6, 1994. Sandoval alleges that the transfer took place pursuant to an oral pre-nuptial agreement between himself and his wife whereby they agreed that all property would be transferred to joint ownership no later than their first wedding anniversary, November 4, 1994. After the transfer of the property, Sandoval filed a Motion to Set Aside the Judgment of the Circuit Court, which was denied on December 16, 1994.

First Union docketed its judgment in Charles County, Maryland in January 1995. On April 5, 1995, Sandoval filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. On June 23, 1995, First Union filed a complaint in bankruptcy court objecting to Sandoval's dischargeability of debt. Sandoval filed an answer, and a motion to dismiss, or, in the alternative, for summary judgment.

On February 27, 1996, the bankruptcy court heard oral argument on the complaint and pending motions and denied Sandoval's motion. On March 4, 1996, the bankruptcy court conducted a hearing and ruled from the bench finding, inter alia, that Sandoval had engaged in conduct that constituted a fraudulent transfer under the Bankruptcy Code (Code), 11 U.S.C. § 727(a)(2)(A), and therefore, Sandoval's discharge was denied. Sandoval appealed the court's decision to the district court. After conducting a hearing on September 9, 1996, the district court affirmed the bankruptcy court. This appeal follows.

II.

"Because the district court sits as an appellant court in bankruptcy, our review of the district court's decision is plenary. In other words, we apply the same standard of review as the district court applied to the bankruptcy court's decision." Bowers v. Atlanta Motor Speedway, Inc., 99 F.3d 151, 154 (4th Cir. 1996) (citations omitted). Therefore,

3

"[w]e review the bankruptcy court's factual findings for clear error, while we review questions of law de novo." Loudon Leasing Dev. Co. v. Ford Motor Credit Co., 128 F.3d 203, 206 (4th Cir. 1997). If the Court determines that the appellant intended to challenge a specific factual finding of the lower court but did not due to an error in his pleading style, the Court may excuse the error and allow a factual challenge. See In re Ford, 773 F.2d 52, 55 (4th Cir. 1985), aff'g 53 B.R. 444 (W.D. Va. 1984).

III.

The primary issue in this case is whether the District Court correctly determined that Sandoval engaged in a fraudulent transfer. The Bankruptcy Code, 11 U.S.C. § 727(a)(2), provides, inter alia, that

> The court shall grant the debtor a discharge, unless--
>
> * * *
>
>  (2) the debtor with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under title 11 has transferred, removed, destroyed, mutilated or concealed --
>
>  (A) property of the debtor, within one year before the date of the filing of the petition; or
>
>  (B) property of the estate, after the date of the filing of the petition.

Id.

When discharge is challenged under Section 727, the Court must determine whether the debtor had an actual intent to defraud his or her creditors. See In re Woodfield, 978 F.2d 516, 518 (9th Cir. 1992); Ford, 53 B.R. at 449. The question of whether a debtor has the requisite intent is a question of fact. Ford, 773 F.2d at 55.

Direct evidence of fraudulent intent is rare. Therefore, the court can rely on certain indicia of fraud to determine whether a transfer was

4

fraudulently conducted under Section 727. Woodfield, 978 F.2d at 519. For example, (1) if there is a lack of consideration for the transfer, (2) if there is a family relationship between the parties, (3) if there is some retention of the property for personal use, (4) if the financial condition of the debtor before and after the transfer is suspicious, (5) if there is an existence of a pattern or series of transactions after the onset of the financial difficulties or pendency of threat of suit by creditors, or (6) if there is a suspicious chronology of events and transfers. Id. at 518 (recognizing the "badges of fraud" indicative of a fraudulent transfer); Matter of Chastant, 873 F.2d 89, 91 (5th Cir. 1989). The presence of just one of the above listed factors can warrant a court's conclusion that a transfer was fraudulently made, and, certainly, the presence of several factors "can lead inescapably to the conclusion that the debtor possessed the requisite intent." See In re Penner, 107 B.R. 171, 175 (Bankr. N.D. Ind. 1989) (citations omitted).

The transfer of property challenged in this case reveals many of the so-called badges of fraud. First, Sandoval, an insolvent debtor, received no consideration for the transfer of his house and automobile to tenants by the entirety. Second, Sandoval, as an attorney, was more than likely aware that property held as tenants by the entirety is normally exempt from bankruptcy. Third, Sandoval continued to use the house and cars after the property was transferred from individual ownership to ownership by Sandoval and his wife as tenants by the entirety. Finally as to timing, the transfer occurred one month after entry of the judgment in Circuit Court and when bankruptcy proceedings were imminent. The court was unpersuaded by the excuse offered by Sandoval, i.e., the pre-nuptial agreement, as are we. Therefore, based on the weight of the evidence and the existence of several indicators of fraud, the bankruptcy court's determination that Sandoval intentionally transferred the property with the intent of hindering, delaying or defrauding his creditors was not clearly erroneous. According, we affirm the denial of his discharge pursuant to 11 U.S.C. § 727(a)(2).

IV.

Sandoval additionally claims that the bankruptcy court erred in rejecting his asserted defenses regarding the transfer of property.

5

First, Sandoval alleges that the alleged lack of value of the property is relevant to whether he fraudulently transferred the property under Section 727. The bankruptcy court held and the district court affirmed that whether the transfer actually injures the creditor (First Union in this case) is irrelevant to whether the debtor fraudulently transferred the assets. We agree.

We find no statutory authority for the debtor's argument that the lack of value of property is a valid defense to fraudulent transfer. Furthermore, the clear weight of authority in the circuits provides that lack of value is not a valid defense. The Ninth Circuit addressed this issue in In re Adeeb, 787 F.2d 1339, 1343 (9th Cir. 1986), and held that lack of injury to creditors is irrelevant for the purpose of denying a discharge in bankruptcy. Similarly, the Eleventh Circuit in In re Davis, 911 F.2d 560, 561 (11th Cir. 1990), held that whether transferring the assets actually reduced the assets available to the debtor's creditors was irrelevant in deciding whether to discharge the debts. See also In re Smiley, 864 F.2d 562, 567 (7th Cir. 1989); Future Time. Inc. v. Yates, 26 B.R. 1006, 1009 (M.D. Ga. 1983) (finding fact that debts on residence exceeded value does not shield debtor from fraudulent transfer liability when he purposefully transferred residence to wife to avoid discharge), aff'd, 712 F.2d 1417 (11th Cir. 1983); McGalliard v. McGalliard, 183 B.R. 726, 731-732 (Bankr. M.D.N.C. 1995) (noting that major difference between § 536(a)(6) and § 727(a)(2) is that § 536 focuses on whether there is an injury to the creditor).

Sandoval urges the Court to rely instead on In re MacDonald, 50 B.R. 255 (Bankr. D. Mass. 1985). In MacDonald , the court adopted the no value defense finding that the lack of value in the residence and vehicle essentially excused the transfer. Similarly, Sandoval relies on In re Whitcomb, 140 B.R. 396 (Bankr. E.D. Va. 1992), which followed MacDonald and held that since the debtor transferred entireties property and entireties property is exempt under Virginia law, it had no value and therefore was not fraudulently transferred. We agree with the district court and the bankruptcy court, and decline to follow either the MacDonald or Whitcomb cases on this issue. First, both of these cases are distinguishable from this case since in both cases the debtors held the property as tenants by the entirety prior to transfer. Furthermore, to the extent that either MacDonald  or Whitcomb stand

6

for the broader proposition advanced by Sandoval-- that a lack of value in transferred property automatically excuses a debtor that would otherwise be liable for a fraudulent transfer under Section 727 -- we respectfully disagree, and instead follow the greater weight of authority cited above.

Accordingly, we find that whether the property has actual value is irrelevant to the issue of whether the debtor had a fraudulent intent when he transferred property subject to bankruptcy proceeding, and that injury in fact need not be specifically shown to trigger 11 U.S.C. § 727(a)(2)(A). We find no reason to carve an exception out of the clear language of Section 727, and agree with the bankruptcy court and the district court that regardless of the value of the property transferred by the debtor, the debtor should not be rewarded for fraudulent actions.

Second, for the same reasons that we reject Sandoval's "no value" defense, we reject his contention that the transfer could not have been fraudulent since the property transferred was exempt from the bankruptcy proceeding prior to transfer. Once again, Sandoval relies on the Whitcomb case for the supposed proposition that a realizable value is a prerequisite for a finding under 11 U.S.C. § 727. Aside from our previous decision not to follow the holdings of either Whitcomb or MacDonald, the facts of this case are materially different from those in Whitcomb. That is, in Whitcomb the debtor transferred property that was already exempt, i.e., entireties property. In this case, Sandoval took property owned solely by him and subject to a bankruptcy proceeding and transferred it to entireties property, which is normally exempt from the bankruptcy proceedings. It is this Court's opinion that the Whitcomb case stands for the limited proposition that since entireties property is exempt under Virginia law, a creditor cannot succeed in barring a discharge under Section 727 where a debtor transfers entireties property. Therefore, the reasoning in Whitcomb does not apply here. As set forth above, Sandoval's transfer of his residence and automobile was done with the actual intent of defrauding his creditors under Section 727 by converting nonexempt property to exempt property. Therefore, he is precluded from relying on the present exempt status of the property to obtain dischargability. See In re Moreno, 892 F.2d 417 (5th Cir. 1990).

7

Third, Sandoval contends that the purpose of the Bankruptcy Code, i.e., to give an honest debtor a fresh start, supports a ruling in his favor. Simply put, since we have determined based on the stipulated facts and relevant law that Sandoval was correctly judged to have fraudulently transferred property to avoid discharge, Sandoval's suggestion that the "honest debtor" protection of Code should apply to him begs the question. Considering the facts in this case, Sandoval cannot now defend his fraudulent actions under the auspices of the purpose of the Code to protect "honest" debtors.

Fourth, Sandoval claims that the transfer did involve adequate consideration. However, the court's factual determination that there was not adequate consideration for the transfer was only one of several factors that the court identified as bases for its opinion that the debtor had fraudulently transferred the property. Since Sandoval did not specifically challenge the factual findings made by the bankruptcy court, factual challenges such as this are not properly before this Court. However, assuming Sandoval intended to challenge this finding and failed to due to an error in his pleading, we readily conclude that the bankruptcy court's findings were not "clearly erroneous."

In this case, the bankruptcy court relied on the terms of the deed which expressly stated that there was no consideration for the transfer. Additionally, the bankruptcy court considered the credibility issues and the believability of the debtor's defense and based its determination on the testimony at the hearing. The bankruptcy court found that Sandoval's excuse for the transfer, i.e., the oral pre-nuptial agreement, "was simply unpersuasive." (J.A. 36.) The district court affirmed the bankruptcy court's findings which were based on the testimony presented at the hearing. On appeal, Sandoval offers no factual support for his contention that the transfers were for adequate consideration, nor does Sandoval offer any basis for his contention that the bankruptcy court or the district court clearly erred in finding that there was no consideration. Therefore, we conclude that the factual finding that the transfer was made without adequate consideration was not clearly erroneous.

Finally, Sandoval contends, without any authority, that when First Union recorded its Virginia judgment in Calvert County, Maryland, that the recordation amounted to a lien and an avoidable preference

8

under 11 U.S.C. § 547, which according to Sandoval obviates the possibility of a fraudulent transfer. Because First Union never obtained a lien on the transferred property, we do not reach the merits of the argument advanced by Sandoval. Under Maryland law, recording a judgment lien is effective only as to the property of the judgment debtor in that county, and will not attach to property held as joint tenants unless and after severance and the creation of a separate estate in title and possession. See Eastern Shore Bldg. and Loan Corp. v. Bank of Somerset, 253 A.2d 367, 370-71 (Md. 1969). Sandoval transferred the property to tenants by the entirety in late November 1994. First Union's judgment was not recorded in Calvert County until January 1995. Therefore, as a matter of law the judgment could not have attached to the transferred property. Id.

V.

For the reasons set forth above, the district court's decision, affirming the bankruptcy court, is affirmed.

AFFIRMED

9